THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER HERING, Defendant-Appellant.

(No. 12114;

Fourth District—May 1, 1975.

Samuel J. Andreano, of Joliet, and John L. Barton, of Marseilles, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz and Martin P. Moltz, both of Illinois States Attorneys Association, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The defendant appeals from convictions entered on jury verdicts of guilty to each of 10 counts charging possession, and possession with the intent to deliver, 5 quantities of various unlawful drugs, and from the sentences imposed thereon. The defendant contends that the initial search of his automobile on the highway which disclosed a relatively small quantity of marijuana under the front seat was unlawful, and that, accordingly, the subsequent search of his trunk disclosing a larger quantity of various dangerous drugs was also unlawful as a fruit of the poisonous tree, and, in the alternative, was conducted pursuant to an invalid

search warrant. Defendant also complains that the prosecutor's conduct during the trial and especially in closing argument was improper and prejudicial. Defendant contends that he should not have been sentenced on the 5 charges of simple possession because they were lesser included offenses of the 5 charges of possession with intent to deliver pertaining to the same quantities of drugs, that the trial judge imposed excessive sentences, and that the defendant is entitled to the sentencing changes of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1 *et seq.*) which are beneficial to him.

At approximately 1 A.M. on September 1, 1971, an Illinois State trooper noticed that one of the headlights on defendant's automobile was not functioning. The defendant was not violating the speed limit or any other traffic laws and immediately pulled over to the side of the road when the officer turned on his flashing red light. After the defendant satisfactorily explained that his automobile had Wisconsin license plates and registration while he had an Illinois driver's license because the defendant was a student in Wisconsin, the officer told the defendant he would only issue a "written warning." The officer took the defendant's driver's license back to the squad car, and while filling out the warning ticket, looked up to see the defendant driving away and just disappearing over the top of a railroad overpass. The defendant was not traveling fast so the officer soon caught up with him and again the defendant pulled to the side of the road as soon as he saw the flashing red lights. The officer testified that when asked why he left while the officer still had his driver's license and was writing out the warning ticket, the defendant gave no explanation. The officer testified that he thought the defendant might have been drinking, which could be the reason for driving away, and that defendant appeared to be a little nervous and somewhat incoherent, even though he did not really seem to be intoxicated. The officer testified that he was not satisfied with the defendant's answer that he had not been drinking, and so told the defendant to get out of the car and step away; and after the defendant did so, the officer squatted down and looked under the driver's seat with his flashlight. The defendant never gave permission to search his automobile. As the officer walked around the car to the other side, he saw that the door was locked and told the defendant to get in the car and unlock it for him, which the defendant did. The officer shined his flashlight under the passenger's side of the front seat, and found several plastic bags which the officer believed to be marijuana.

The defendant testified that when the officer initially stopped him and told him about the defective headlight, the officer returned his registration papers and said he was only going to give the defendant a warning,

and that the defendant thought that he had gotten his driver's license back and did not know that there was such a thing as a written warning or ticket, so drove away. The defendant's version of the search under his front seat when the officer stopped him the second time corroborates the testimony of the officer.

At the trial, the officer testified that he had the impression the defendant might have been drinking because of his nervousness and incoherence, but that he did not arrest the defendant for intoxication, and that he did not consider a warning ticket to be an arrest. As to the second stop, the officer testified that he did not know the defendant's reason for leaving while the officer was writing out a warning ticket, but felt there must be some reason, and "I didn't know if he was—just committed a felony or what was taking place. I didn't know if there was a gun or booze, or what was underneath the car or in his possession." When asked why he looked under the front seat, the officer testified that normally when a driver has been drinking, he slides the bottle underneath the passenger side, thinking that that is the last place a police officer will look.

After finding the cellophane bags which he believed to contain marijuana, the trooper placed defendant under arrest and asked permission to search the trunk of the car which defendant refused to give. After defendant was removed from the scene, his automobile was impounded, and the next day after laboratory tests confirmed that the material found under the seat was marijuana, a search warrant for the entire car was obtained. When the trunk was opened, the officer found the four plastic bags containing a quantity of capsules containing white powder, loose white powder, and small aluminum foil packets of white powder, as well as 56 small plastic bags of marijuana. Chemical tests disclosed that the various quantities of white powder were drugs commonly known as LSD, MDA, PCP, and cocaine.

From those 5 groupings of drugs, 10 counts were brought against the defendant, 5 for the knowing possession and 5 for the knowing possession with intent to deliver, and convictions were entered and sentences imposed on all 10 of the guilty verdicts returned by the jury.

■■ All searches conducted without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. (*Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856.) The defendant clearly did not consent to the search in the instant case, so it must be justified, if at all, either as incident to arrest (*Chimel v. California*, 395 U.S. 752, 23 L.Ed. 2d 685, 89 S.Ct. 2034), or as a search made with probable cause and under exceptional circumstances such as may exist when the object of

the search is a motor vehicle. (*Carroll v. United States*, 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280.) In any event, a search cannot be justified by what it produces, nor an arrest justified by the fruit of an illegal search. *Sibron v. New York*, 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889.

An oral argument, the State cited *People v. Ricketson*, 129 Ill.App.2d 365, 264 N.E.2d 220, for the proposition that the initial stopping of the defendant may have been an arrest thus triggering the recent Supreme Court opinions in *United States v. Robinson*, 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467, and *Gustafson v. Florida*, 414 U.S. 260, 38 L.Ed.2d 456, 94 S.Ct. 488, regarding the scope of searches incident to custodial arrests for minor traffic offenses. We find these cases to be inapplicable here. Arrest is defined as the actual restraint of the person or submission by the person to custody. (Ill. Rev. Stat. 1973, ch. 38, par. 107—5.) The officer's testimony in the instant case makes it clear that even though he was suspicious that the defendant was under the influence of something in a vague sort of way because of his speech and action, and those suspicions were bolstered by the driving away while the officer had defendant's driver's license, the officer stated that he did not think there was reasonable cause to arrest the defendant, and that he did not consider a warning ticket to be an arrest. Therefore, the search in this case was not conducted pursuant to a valid search warrant nor incident to a custodial arrest, so must find its support under *Carroll* since the object of the search was an automobile on a public highway.

The defendant contends that since the officer testified that he had not arrested the defendant at the time of the search, and had no intention of doing so because he felt there was no probable cause before the search, that the search was invalid because section 108—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 108—1) provides that a search may only be made pursuant to a warrant or a valid arrest. The defendant recognizes the authority of *Carroll* and does not disagree that the circumstances of this case might fit into that exception to the search warrant requirement, but rather cites *People v. Collins*, 49 Ill.2d 179, 274 N.E.2d 77, holding that States may give more protection than the Federal constitution or the United States Supreme Court minimum protections, and that the Illinois legislature has done so in the area of search and seizure by the above provision in section 108—1 of the Code. However, nothing in that statute or the Comments thereto suggests that it is to be exclusive. Rather, it authorizes searches incident to arrest within prescribed bounds as to area and purpose.

■■ Of course, probable cause is required for any warrantless search and that is a belief which is reasonable that a search of a particular place or thing will disclose evidence, fruits of the crime, or is necessary for

the protection of the police officer. (*Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022.) The test is whether the search was reasonable (*People v. Wright*, 42 Ill.2d 457, 248 N.E.2d 78), and the burden of showing that a search without a warrant was reasonable is on the prosecution. *People v. Bussie*, 41 Ill.2d 323, 243 N.E.2d 196.

■■ In the instant case, the second stopping of defendant's automobile was not directly concerned with the defective headlight or any traffic offense, but rather was because of the defendant's conduct in driving away while the officer was writing out a warning ticket and still possessed the defendant's driver's license. It is well established that valid searches not incidental to an arrest may be made without a warrant so long as they are based upon probable cause, which is defined as knowledge of facts justifying a reasonably prudent person in believing that a crime has been or is being committed, and that evidence thereof is contained in the automobile. (*Carroll.*) Because of its inherent mobility, the warrantless search of an automobile can be upheld on the theory wholly different from that justifying a search incident to arrest. *People v. Powell*, 9 Ill.App.3d 54, 291 N.E.2d 669.

■■ The focus is not on whether the original stopping of the defendant on account of his defective headlight was an arrest, because it was the defendant's subsequent behavior which caused the officer to stop the car the second time and make the search. The defendant's act of driving away and then saying that he did not know why he did so could be interpreted in several ways: it could reasonably be believed that the defendant was attempting to escape in order to avoid the discovery of contraband or weapons or evidence of other crimes in the car, or it could be believed that the defendant was so under the influence of alcohol or other narcotics that he was not aware of what he was doing—either of which would give the police officer probable cause to believe that a crime had been or was being committed and that evidence thereof was contained in the car.

Defendant also argues that the search warrant for the entire automobile acquired after it was determined that the plastic bag found under the front seat of his automobile contained marijuana was a fruit of that illegal search. There was no intervening independent facts to justify a search warrant, and it was completely based on the finding of two bags of marijuana under the front seat of the defendant's car, so it clearly was a fruit of the original search, but since we have determined that the initial search was valid, the search warrant obtained on its disclosures was proper.

■■■ The defendant next argues that the search warrant was defective for failing to allege facts showing probable cause to search the trunk as

required by section 108—3 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1973, ch. 38, par. 108—3.) The complaint for a search warrant recited that two bags of marijuana had been found in the defendant's car the day before, and that the defendant had been arrested for possession of the two bags. The defendant complains that there was no fact or conclusion alleged concerning the presence of marijuana or other drugs at the time the warrant was issued. The defendant seems to complain that the affidavit asking for a search warrant did not allege a belief or basis for belief that defendant was selling drugs or transporting them. However, the search warrant was for the automobile, where two bags of known marijuana was found. "Probable cause" means that the facts or circumstances within the affiant's knowledge were sufficient in themselves to warrant belief by a reasonable man of reasonable caution that the law was being violated, and that evidence of it was in the vehicle to be searched. (*People v. Francisco*, 44 Ill.2d 373, 255 N.E.2d 413.) Probable cause for issuance of a search warrant requires neither a showing of guilt beyond a reasonable doubt, nor commands a naïve evaluation of facts. *People v. McCoy*, 10 Ill.App.3d 1054, 295 N.E.2d 483.

The defendant next contends that his convictions of Counts III and IV (based on the possession of 30 grams or more of a substance containing LSD) were improper since the State failed to prove beyond a reasonable doubt that the defendant possessed 30 grams or more of LSD. Regarding the quantity of LSD proven to have been possessed by the defendant, the superficial issue as to the State's burden of proof is whether the State must test every particle of white powder in every capsule and ascertain that LSD is present in all in order to offer all of the powder into evidence as proof that the defendant possessed 30 grams or more of the contraband. This contention is disposed of by the holding in *People v. Ohley*, 15 Ill.App.3d 125, 303 N.E.2d 761. The fact that only a part of the material is positively identified as containing the contraband only goes to the weight of the evidence rather than its admissibility. In the instant case, the chemist tested 30 out of hundreds of capsules chosen at random, some from each bag, and found all tested contained LSD, and so concluded that all of the capsules did.

However, a more significant question is—what is to be included in the weight, and whether each gelatin capsule should have been emptied and only the white powder containing LSD have been weighed and admitted into evidence. The chemist's report introduced into evidence in this case indicated that most of the powder was in gelatin capsules, with the total weight of 184.97 grams, although one bag contained 8.73 grams of loose powder not in any capsules, leaving a total weight of 176.24 grams of capsules filled with powder. Subtracting the 8.73 grams

from the required 30.0 grams leaves 21.27 grams of powder containing LSD that the jury would have had to find in the capsules alone to determine that the defendant possessed a total of 30 grams of the contraband. Dividing 21.27 grams by 176.24 grams gives the figure of 0.1207, which means that if 12% or more of the entire capsular samples were powder, the State has proved possession of at least 30 grams of a substance containing LSD. In light of those relative weights, the jury's conclusion that the defendant possessed 30 grams or more of a substance containing LSD does not appear to be so unsatisfactory as to raise a reasonable doubt of guilt (*People v. Bell*, 53 Ill.2d 122, 290 N.E.2d 214).

■■■ The defendant's next contention is that he suffered prejudice by improper statements and arguments by the prosecutor. All but two of these comments and arguments complained of occurred in closing arguments where wide latitude is permitted counsel. No objections were raised at the trial to most of the prosecutor's allegedly prejudicial comments in his argument, and any error as to them was thereby waived. (*People v. Dailey*, 51 Ill.2d 239, 282 N.E.2d 129; *People v. Edwards*, 55 Ill.2d 25, 302 N.E.2d 306.) The prosecutor's argument that defendant was a drug pusher was based on the variety and quantity of drugs found in his automobile, and papers on which names, quantities of drugs, and prices were written, and was a proper comment on the evidence. (*People v. Lomax*, 126 Ill.App.2d 156, 262 N.E.2d 63.) The defendant argues that during the course of the trial, the prosecutor prejudiced the defendant's right to a fair trial on whether he possessed more than 30 grams of LSD by stating that if the prosecution chemist did not testify that the defendant possessed several hundred capsules of LSD, he (the prosecutor) would dismiss the charges of possession of LSD against the defendant. However, the record discloses that the statement the defendant complains of was taken out of context. The prosecutor did not mention the quantity of LSD capsules, but rather, when an objection was made to a witness called to testify as to the value of LSD on the grounds that there was not yet a showing that the defendant possessed any LSD, the State's attorney explained that he was taking that witness out of order and before the chemist because he would be unavailable later, and assured the court that if the chemist did not testify that there was LSD involved, the prosecutor would ask that the witness' testimony be stricken and that the count charging the possession of LSD be dismissed.

■■ The defendant also complains that he was prejudiced on his defense of insanity by the prosecutor's statement on cross-examination of the defendant's psychiatrist to the effect that if the defendant were to be committed to a mental institution, he might be free in as little as 5 days. The defendant's objection was sustained by the trial court which

ordered all testimony relating to what other boards or juries might do to be stricken. Although the record does disclose some comments by the prosecutor that might have been better not made, the evidence of guilt is clear and convincing, and none of the various remarks defendant complains of appear to have in any way influenced the verdicts of guilty. *People v. Naujokas*, 25 Ill.2d 32, 182 N.E.2d 700.

Counts I, III, V, VII, and IX charged the defendant with the possession with the intent to deliver the 5 named quantities of drugs. Counts II, IV, VI, VIII, and X charged the defendant with simple possession of the same 5 quantities of different drugs. Therefore, the even-numbered counts involving the same drugs and the same conduct on the part of the defendant, with the only difference being a lesser mental state than the preceding odd-numbered counts, must be reversed. (*People v. Lerch*, 52 Ill.2d 78, 284 N.E.2d 293.) As to the remaining 5 convictions for possession with intent to deliver, the defendant contends that he is entitled to sentence reductions because the trial court indicated that it wished to make an example of the defendant and abused its discretion by noting the defendant's good background and advanced education, but considered them to be aggravating rather than mitigating under the rationale that the defendant possessed high intelligence and most of the advantages of our society but purposely set out to distribute drugs. The State responds by pointing out the considerable quantity of drugs found in the defendant's car, their packaging, and records kept by the defendant indicating that he was a dealer in drugs, all of which show a great potential danger to the community, justifying the judge imposing more than the absolute minimum sentence available. There is nothing in the record to indicate that the trial court abused its discretion by sentencing the defendant to terms within the then applicable range for sentences. *People v. Burbank*, 53 Ill.2d 261, 291 N.E.2d 161.

The defendant also claims that he is entitled to a remand for resentencing under the more favorable terms of the Unified Code of Corrections since his cause is still on direct appeal. (*People v. Chupich*, 53 Ill. 2d 572, 295 N.E.2d 1.) Aside from the even-numbered counts, which as discussed above must be reversed as lesser included offenses, the five following convictions and sentences were also entered and imposed. Count I is a conviction of section 5(e) of the Cannabis Control Act which carried a penalty range of 1 to 7 years, with 3 to 7 being imposed. As section 5(e), that offense under the Unified Code of Corrections is made a Class 2 felony (Ill. Rev. Stat. 1973, ch. 56½, par. 705(e)), which carries a 1- to 20-year sentence (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(3)), with the minimum to be 1 year unless the court decides otherwise based upon the circumstances of the offense and the defendant,

and the minimum not to be greater than one-third the maximum. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3).

Count III is a conviction of section 401(a)(8) of the Controlled Substances Act, which carried a penalty of 10 years to life and a fine not to exceed $200,000, with the defendant being sentenced to 15 to 50 years' imprisonment. Under the Code, possession with the intent to sell 30 grams or more of any substance containing LSD is a Class 1 felony (Ill. Rev. Stat. 1973, ch. 56½, par 1401(a)(8)), which carries any term in excess of 4 years with the minimum to be 4 years unless the court, having regard to the nature of the offense and the circumstances of the defendant, sets a higher minimum. Ill. Rev. Stat. 1973, ch. 38, pars. 1005—8—1(b)(2), 1005—8—1(c)(2).

Counts V, VII, and IX are all convictions of section 401(b) of the Controlled Substances Act, which provided for a 1- to 20-year sentence in the penitentiary and a fine of not more than $25,000. A sentence of 7 to 20 years was imposed on the defendant for each of these three counts. Under the Code, a violation of section 401(b) of the Controlled Substance Act is a Class 2 felony (Ill. Rev. Stat. 1973, 56½, par 1401(b)), and so carries a 1- to 20-year term and a fine up to $25,000 (Ill. Rev. Stat. 1973, ch. 38, 1005—8—1(b)(3)), with the minimum to be 1 year unless the court, having regard to the nature of the offense and the circumstances of the defendant, sets a higher minimum, with the minimum not to be more than one-third of the maximum set. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3).

■■■ Therefore, as to Count I, the Code has increased the range of penalties for that particular violation of the Cannabis Control Act by allowing a maximum of 20 rather than 7, but the penalty of 3 to 7 years imposed on the defendant violates the "one-third rule;" so that the 3-year minimum should be reduced to 2 years 4 months. As to Counts V, VII, and IX, the range of sentences under the Unified Code of Corrections for that violation of the Controlled Substances Act remains the same—1 to 20—but the three sentences of 7 to 20 years imposed violates the one-third rule, so the 7-year minimums should be reduced to 6 years 8 months. As to Count III, that violation of the Controlled Substances Act is now a Class 1 felony, which has a 4-year minimum rather than a 10-year minimum, so the sentence of 15 to 50 imposed on the defendant must be vacated and the defendant resentenced. Therefore, upon remand, the trial court is to resentence the defendant on Count III as a Class 1 felony, and shall modify the sentences on Counts I, V, VII, and IX to comply with the one-third rule as discussed above.

Affirmed in part; reversed in part; remanded with directions.

SMITH, P. J., and TRAPP, J., concur.