(No. 48750.— )
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LINDA KAY COSLET, Appellee.

*Opinion filed June 1, 1977.*

William J. Scott, Attorney General, of Springfield, and Michael G. Carroll and Edward P. Miller, State's Attorneys, of Tuscola (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Robert C. Perry and G. Michael Prall, of the Illinois State's Attorneys Association Prosecutor's Appellate Service, of Springfield, of counsel), for the People.

Richard J. Wilson, Deputy Defender, and Daniel D. Yuhas, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

After a jury trial in the circuit court of Douglas County, defendant, Linda Kay Coslet, charged with murder and represented by court-appointed counsel and co-counsel, was convicted of one count of voluntary manslaughter and one count of concealment of a homicidal death involving the demise of her husband, Jackie Lloyd Coslet. The Appellate Court for the Fourth District, while rejecting

defendant's contentions in her appeal to that tribunal, reversed these convictions on the basis of an issue of conflict of interest not raised in the initial briefs and remanded the cause for a further evidentiary hearing on that issue and a potential new trial. (*People v. Coslet* (1976), 39 Ill. App. 3d 302.) On the State's appeal to our court, we must resolve whether such a result is mandated by either the suspected conflict of interest or any other issue before this court.

We have examined the record regarding the discovery and instruction issues presented to and decided by the appellate court in this case (39 Ill. App. 3d 302, 303-04). We agree that neither of the issues constitutes grounds for reversal even though the State's response to the discovery motion of the defendant leaves much to be desired. Rather than finding no harm due to lack of surprise on the part of the defense we believe the X rays, not having been disclosed to defendant and being of vital importance to the proof or disproof of the State's case, should not have been admitted without allowing the defense time to prepare a defense report as to the X rays. Any effect the exclusion or discrediting of the X rays and the roentgenologist's testimony would have had in creating a defect in the State's proof of the criminal agency element of the *corpus delecti* (*People v. Manske* (1948), 399 Ill. 176) was negated by defendant's clear and unequivocal admission of guilt in open court in her attempt to present a defense of self-defense, since a defendant may, by judicial confession, waive the production of all evidence of his guilt (*People v. Green* (1959), 17 Ill. 2d 35, 42, *cert. denied* (1960), 361 U.S. 972, 4 L. Ed. 2d 551, 80 S. Ct. 605).

Though the appellate court quite adequately summarized the facts relevant to a disposition of the issues raised by the parties, we will expand briefly upon the facts of importance in ruling on the conflict-of-interest issue raised by the court itself. Raymond Lee, Jr., an attorney practicing in Tuscola, Illinois, was appointed on September

4, 1973, by the circuit court of Douglas County to represent the defendant in the case presently before this court. On September 11, 1973, defendant, as wife of Jackie Lloyd Coslet, petitioned for the Tuscola National Bank to be named administrator of his estate. The following day the bank accepted this office, and Mr. Lee, as attorney for the bank, thus became attorney for the administrator of Mr. Coslet's estate.

During the course of defendant's trial, Mr. Lee served as attorney in both capacities. Subsequent to defendant's convictions on December 17, 1973, the administrator filed a petition in the probate division of the circuit court seeking to (1) bar defendant, by virtue of her voluntary manslaughter conviction, from receiving title to the whole marital premises as surviving joint tenant, (2) sell those premises, (3) pay debts and expenses of the estate, and (4) disburse the remainder to those entitled to it by law, namely, half the remainder to defendant as her portion of the joint tenancy and the other half among the heirs at law, including defendant. This petition was granted by a specially appointed judge, defendant's trial judge having recused himself, on January 21, 1975. Contending defendant should have been completely barred from inheriting, the heirs other than defendant filed objections to this order. The dismissal of those objections was the basis for an appeal in a separate case in which the Appellate Court for the Fourth District has rendered an opinion. (*In re Estate of Coslet* (1976), 39 Ill. App. 3d 305.) Not having this case before us, we refrain from commenting upon it.

In 1914, this court considered it to be "firmly established" that, once an attorney has been retained and received the confidence of a client, he cannot serve adverse interests regardless of how innocent his motives or how good his intentions. (*People v. Gerold* (1914), 265 Ill. 448, 477.) The termination of the attorney's employment by the client does not affect the application of this rule

regarding the general subject matter as to which the attorney has been retained. 265 Ill. 448, 478.

This court adopted a *per se* conflict-of-interest rule in *People v. Stoval* (1968), 40 Ill. 2d 109, 112, whereby allegations and proof of prejudice are unnecessary in cases where a defense counsel, without the knowledgeable assent of the defendant, might be restrained in fully representing the defendant's interests due to his or her commitments to others, with even closer scrutiny being applied where counsel is appointed for defendant. (40 Ill. 2d 109, 113.) The test is not and cannot be based only upon the source of a financial gain by the attorney. A rule based solely on financial gain would not only be unworkable in the everyday practice of law but would also have no necessary correlation with the conflicts of interest that arise in such practice. The *Stoval* rule, based upon actual commitments to others, is both workable and necessarily correlates with such conflicts. See *People v. Kester* (1977), 66 Ill. 2d 162, 166-69.

To determine whether attorney Lee was in a *Stoval* conflict situation with regard to the defendant, it is necessary merely to examine the purposes of an administrator of an estate, thereby indicating the role of an administrator's attorney. This court clearly set forth these purposes in *Cotterell v. Coen* (1910), 246 Ill. 410, 413, as providing for and insuring: (1) the conservation of the personal assets of the estate, including the collection of all debts due the decedent; (2) the payment of all debts due from the decedent; and (3) the proper distribution of the residue among the heirs at law according to the applicable statute of descent and distribution.

Defendant's right of survivorship to properties held by her and her husband as joint tenants was barred by the trial court during the settlement of Jackie Lloyd Coslet's estate as a matter of public policy because of her conviction for voluntary manslaughter. Consequently, her conviction resulted in her husband's interests in certain

properties becoming a part of his estate rather than passing to her as the surviving joint tenant. Therefore a controversy arose, as defendant has suggested in her brief, as to whether the defendant was entitled to inherit through the estate because of her conviction.

Mr. Lee, as attorney for the administrator of the estate of Mr. Coslet, had a duty to collect all of the assets he could muster and distribute them to the heirs, since Mr. Coslet died intestate. Defendant was not his sole heir; there were others. Her conviction at least raised the possibility that the estate would be enriched. This court holds that he therefore was in a conflict-of-interest position in defending her from the charge of murdering her husband—the charge that led to her conviction of voluntary manslaughter.

Testimony also established that Mr. Lee was awarded $1,000 as a fee for acting as the attorney for the administrator of Mr. Coslet's estate even though a normal estate of this size would generate a fee of only $500.

Indeed it was Mr. Lee himself who testified that the higher fee was necessary because of the complex issues arising out of the defendant's criminal conviction.

The right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457). In *Porter v. United States* (5th Cir. 1962), 298 F.2d 461, 463, it was said:

> "The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or

restrained by commitments to others."

While there is no question here that defendant knew her attorney was also the attorney for her husband's estate, there has been no showing that he had her "knowledgeable assent."

" 'It has been pointed out the "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.' " *People v. Stoval* (1968), 40 Ill. 2d 109, 114, quoting *Johnson v. Zerbst* (1937), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019.

There is nothing in the record to show, and we cannot presume, that defendant knew the subtleties of the laws of descent and distribution; the effect of a conviction for murder or voluntary manslaughter on her rights to inherit; the duties of an attorney for the administrator of her husband's estate; the fiduciary relationship between the administrator and the heirs of an estate; and all of the other legal and ethical problems involved in the lawyer-client relationship in which she involved herself or became involved.

No allegation of actual prejudice is suggested in any of the briefs, and we do not for that reason have the question of actual prejudice before us. Although defendant could, as an heir at law to her husband's estate, potentially complain of a conflict of interest due to the dual positions of Mr. Lee since Mr. Lee was obligated, even after the convictions, not to take an adverse position to his original

client based upon his representation of that client (*People v. Gerold* (1914), 265 Ill. 448, 478), that question is not before us. Additionally, the question of the effect of a voluntary manslaughter rather than a murder conviction upon a defendant's right to inherit from the estate of the person slain is not before this court. See Ill. Rev. Stat. 1975, ch. 3, par. 15a; *In re Seipel* (4th Dist. 1975), 29 Ill. App. 3d 71.

This court, in adopting this opinion, is well aware that in many, if not most, instances a prosecutor has no knowledge of, and, indeed, is probably powerless to avoid, a situation wherein the person he is prosecuting, by his or her own actions, retains an attorney who subsequently puts himself in a conflict-of-interest situation with his client, resulting, as here, in the reversal of a conviction against defendant. One could even conjecture that a defendant and his lawyer could knowingly and collusively enter into such an arrangement in an effort to obtain a reversal in the event of a conviction.

This is a risk that this court is prepared to take, however, in order to assure that every person is assured of the right to effective assistance of counsel at his trial.

The appellate court's reversal of the circuit court is affirmed. That portion of the appellate court judgment remanding for an evidentiary hearing on the conflict-of-interest issue is reversed, and the cause is remanded to the circuit court of Douglas County for a new trial.

*Affirmed in part and reversed*
*in part and remanded.*