THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE
ISHMAN et al., Defendants-Appellants.

Fifth District   Nos. 76-365, 76-366 cons.

Opinion filed May 11, 1978.

KARNS, J., dissenting.

Michael J. Rosborough and John H. Reid, both of State Appellate Defender's
Office, Mt. Vernon, for appellant Reginald Bogay.

Stephen R. Clark, of Montalvo and Clark, of Belleville, for appellant Joe
Ishman.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish, of State's
Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of
the court:

Defendants, Joe Ishman and Reginald Bogay, bring this appeal from
judgments entered by the circuit court of St. Clair County finding them
guilty of the offense of murder following separate jury trials. The sole
issue presented by defendants is whether the office of the public defender
was per se in conflict of interest in representing both defendants.

At 10:15 a.m. on December 19, 1975, three men entered the office of the
P & K Wholesale House. Inside were Edward Kmiecik, the owner, and
Donald Schneider, a customer. Kmiecik's son, Paul, was in a back room at
the time, filling an order. Two of the intruders remained near the door,
while the third approached with a hand gun and announced a holdup. He
pointed the gun at Schneider who handed him his wallet containing,

among other things, a Sears credit card. The man then pointed the gun at Kmiecik and told him to tell whoever was in back room to come out. At this point, the second man stepped forward bearing a sawed-off shotgun. Suddenly, the hand gun discharged striking Edward Kmiecik in the head causing his death. The three men then fled.

After hearing the shot, Paul Kmiecik grabbed a shotgun from the back room and ran outside. He saw two men running and he fired five shots at them before they jumped into an older model white Rambler and drove off.

Around noon that same day, Joe Ishman and another person were arrested at a shopping mall where they were attempting to make a purchase with the Sears credit card belonging to Donald Schneider. When arrested, Ishman was discovered to be driving a 1968 white Rambler. Following his arrest, Ishman informed the police that the other two involved in the instant crime were Reginald Bogay and Sherwin Haywood. Subsequently Ishman made a written statement in which he admitted planning the robbery with Bogay on the day before. He further stated that on that morning he had picked up Bogay and Haywood and had driven them to the wholesale house. According to Ishman, Bogay had a hand gun and Haywood, a sawed-off shotgun. After they entered the building, Ishman stated that he remained near the door while Bogay and Haywood walked inside. After the shot was fired, the three of them left in Ishman's car.

That evening, Reginald Bogay was arrested. In his house, police also found a .357 magnum revolver which Bogay admitted was used in the instant shooting. Bogay gave the police a statement in which he also admitted planning the robbery with Ishman and Haywood. However, according to Bogay, as the three of them entered the wholesale house, Ishman began shoving Bogay and telling him to go on. Bogay stated that Ishman then grabbed Bogay's gun and pointed it at the deceased's head. Bogay further stated that at this point, he turned and ran from the scene but he heard a shot fired. As he continued running toward Ishman's car, he was twice struck with buckshot.

Subsequently, an indictment was filed charging Ishman, Bogay and Haywood with the murder of Edward Kmiecik. The St. Clair county public defender was appointed by the court to represent Ishman and Bogay, and later to also represent Haywood. The public defender, in turn, assigned assistant public defender Milton Wharton to represent Ishman, assistant public defender John Maher to represent Bogay, and he assigned Haywood's representation to himself. On Ishman's behalf, a motion was filed requesting a severance of his case from co-defendants Bogay and Haywood on the grounds of "irreconcilable differences" in their defenses. At a hearing thereon, the court was informed of the

inconsistent statements of Ishman and Bogay and consequently granted the motion.[1]

Bogay proceeded to trial on March 18, 1976. At trial he testified in his own behalf that as the three approached the wholesale house, he realized that he was making a mistake. He stated that Ishman grabbed the gun from him and went and pointed it at the deceased. He (Bogay) then turned around and ran. He stated that as he was running he heard a shot fired.

Ishman was brought to trial on April 6, 1976. At trial he repudiated his statement and denied any involvement in the instant crime. He testified that at 11 a.m. on the date of the crime, he bought Schneider's credit card from Bogay.

Both defendants were found guilty as charged. On April 23, 1976, following a sentencing hearing, Bogay was sentenced to 14 to 20 years imprisonment. On May 7, 1976, a sentencing hearing was held for Ishman after which he was sentenced to 14 to 15 years imprisonment.

■■ Turning to the contention raised by defendants, in Illinois, whenever a defense attorney's commitments to others raise the possibility of a conflict of interests, a *per se* rule of reversal will be invoked without the necessity of a showing of actual prejudice resulting thereby. (*People v. Stoval*, 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Coslet*, 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Kester*, 66 Ill. 2d 162, 361 N.E.2d 569; see also *People v. Meyers*, 46 Ill. 2d 149, 263 N.E. 2d 81; *People v. Cross*, 30 Ill. App. 3d 199, 331 N.E.2d 643; *People v. Drysdale*, 51 Ill. App. 3d 667, 366 N.E.2d 394.) Underlying this rule is the fundamental right to the effective assistance of counsel which requires the undivided loyalty of counsel for the person represented. (*Glasser v. United States* (1942), 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680; *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) The Illinois rule of reversal applies equally where, as here, defense counsel's commitments to others raising the possibility of a conflict, stem from a representation of multiple defendants whose defenses are inconsistent. *People v. Meng*, 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Spicer*, 61 Ill. App. 3d 748, 378 N.E.2d 169; *People v. Frey*, 50 Ill. App. 3d 437, 365 N.E.2d 283; see also *People v. Ware*, 39 Ill. 2d 66, 233 N.E.2d 421; *People v. Johnson*, 46 Ill. 2d 266, 265 N.E.2d 869; but see *People v. Precup*, 50 Ill. App. 3d 23, 365 N.E.2d 1007, *appeal allowed*, 66 Ill. 2d 641.

In the instant case, it is undisputed that each defendant's defense was inconsistent with the other and that such arose immediately upon their

---

[1] A severance was thereafter granted to Haywood too. Subsequent to the trials of defendants herein, Haywood was tried before a jury and found innocent of the crime charged.

arrest owing to their counteraccusatory statements. All the more so, since during their respective trials, each defendant attempted to wholly shift the blame to the other. *People v. Meng; People v. Spicer.*

The State urges, however, that the possibility of a conflict of interests was obviated because each defendant was represented by a separate public defender. This position was advanced and rejected in *Meng* and *Spicer.* We need not restate our reasoning which was fully set forth in those cases except to note that it was the public defender who was appointed to represent the defendants and it was he who continued to be responsible to act as their attorney although empowered to discharge his duties through assistants. Although each defendant was represented by a separate assistant, as such, the attorneys were not independent of one another. See also *People v. Freeman,* 55 Ill. App. 3d 1000, 371 N.E.2d 863.

The State also urges that prejudice resulting from the possible conflict of interests is not reflected in the record. However, as previously stated, to invoke the *per se* rule, prejudice need not be demonstrated. (*People v. Stoval; People v. Kester; People v. Coslet; People v. Meng.*) In the instant case, the trial court required the public defender to represent both defendants herein. He thus bore a solemn duty to represent the best interest of each defendant equally. Yet he could not meet his duty to one without violating his duty to the other. Faced with irreconcilable duties, the public defender was constrained to violate his duty to each defendant on behalf of the other. Effective representation was denied to the extent of the violation of such duty. *People v. Meng.*

■■ A defense attorney must never be placed in the position of having to represent adverse interests or of being ethically restrained in the full exercise of his independent professional judgment. Since we find the possibility that defense counsel herein were in a conflict of interests, reversal is warranted. Accordingly, we reverse the judgments entered by the circuit court of St. Clair County, and remand the causes for new trials at which the defendants are to be represented by independent counsel other than the office of the public defender.

Reversed and remanded with directions.

McCALLISTER, J., concurs.

Mr. JUSTICE KARNS, dissenting:

In dissent for the reasons expressed in my dissenting opinions in *People v. Meng,* 54 Ill. App. 3d 357, 369 N.E.2d 549 (5th Dist. 1977), and *People v. Spicer,* 61 Ill. App. 3d 748, 378 N.E.2d 169 (5th Dist. 1978). I would add that there is not the slightest suggestion that either Ishman or Bogay received ineffective representation. The cases were severed; each

received a separate trial. Neither testified against the other. It is obvious that the severance cured any possible conflict that the public defender's office perceived as no motion to withdraw from representation of either Bogay or Ishman was ever filed. In fact there were no "irreconcilable differences" or inconsistencies in their defenses. I cannot find a remote possibility of conflict here.