THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY McCORD et al., Defendants-Appellants.

Fifth District   No. 77-31

Opinion filed August 9, 1978.

EBERSPACHER, P. J., specially concurring.

Michael J. Rosborough and Rafael Schwimmer, both of State Appellate Defender's Office, of Mt. Vernon, and Paul M. Storment, Jr., Ltd., of Belleville, for appellants.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants Christine McCord and her husband Gary McCord appeal from jury verdicts finding each guilty of the offense of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(a)(6)).

On July 19, 1974, Gary and Christine McCord were indicted, along with Ray Allford and Linda Meyer, for unlawful delivery of a substance containing amphetamine. Defendants' case was not called to trial until May 11, 1976, because of the pendency of *People v. Mayberry*, 63 Ill. 2d 1, 345 N.E.2d 97, a case in which the supreme court reversed a circuit court decision holding that the graduated penalty provisions of the Controlled Substances Act were unconstitutional. During the period while *Mayberry* was pending before the supreme court persons charged with an offense under the Controlled Substances Act could either waive their rights to a speedy trial and await the supreme court's decision or demand a speedy trial and risk conviction and imprisonment under a statute which might later be held unconstitutional. The supreme court's decision in *People v. Mayberry* was announced in March 1976 and published in the advance sheets in early May. A continuance was granted the State on May 11, 1976, to allow the State time to produce Gary McCord who was imprisoned for another offense. On August 16, 1976, the trial court denied defense counsel's motion to dismiss for failure to prosecute and granted the State's request for a continuance until September 13, 1976. A demand for a speedy trial was filed on August 24, 1976, and a second motion to dismiss for failure to prosecute was filed on September 14, 1976. The trial court denied the motion and indicated that the defendants had waived their speedy trial rights by choosing to wait for the supreme court's decision in *Mayberry* rather than demand a speedy trial.

Gary and Christine McCord were tried for the offense of unlawful delivery of a controlled substance on December 8, 1976. The testimony at trial indicated that two IBI agents and an informant met Gary McCord at his home in Fairview Heights for the purpose of purchasing some amphetamine. According to the testimony of the IBI agents, Linda Meyer, Ray Allford, Gary McCord and Christine McCord participated in counting out and packaging 10,000 tablets of a substance purported to contain amphetamine. Agent Inlow testified he paid $1250 for the 10,000

tablets and that Christine McCord counted the money. Christine McCord testified that she was feeding her baby while the amphetamine was being packaged and the money exchanged and stated that she did not take part in the transaction. She also stated that her husband did participate in the sale. A chemist testified that he tested 100 out of the 10,000 tablets and determined that they were amphetamine. The chemist indicated that based on his testing of the 100 tablets, he believed that all 10,000 tablets were amphetamine. This report was admitted into evidence over the defendants' objection that it could not be assumed that the remaining 9,900 tablets contained amphetamine.

The jury found Gary and Christine McCord guilty of unlawful delivery of a controlled substance. Gary McCord received a sentence of 6 to 8 years and Christine a sentence of 4 years to 4 years and one day. An appellate brief was filed on behalf of Mr. and Mrs. McCord on August 3, 1977, by counsel for both defendants at trial. This brief contends that defendants were denied a speedy trial, that the trial court erroneously admitted evidence of chemical tests conducted by the State and that the jury verdict was against the manifest weight of the evidence. A motion by Mrs. McCord to appoint the State Appellate Defender to represent her was granted by the court on October 27, 1977, and a supplemental brief was filed alleging that Mrs. McCord was denied effective assistance of counsel at trial as a result of a per se conflict of interest which arose from retained counsel's representation of both Mr. and Mrs. McCord. We will first consider the issues raised in the brief filed on behalf of both Christine and Gary McCord.

■■ Defendants contend that their sixth amendment rights to a speedy trial were denied as a result of nearly 2½ years delay between their indictment and trial. The mere existence of this rather lengthy delay, however, does not conclusively establish a denial of sixth amendment rights. In order to determine whether defendants' speedy trial rights were violated, we must also consider the reason for the delay, the defendants' assertion of their rights, and any prejudice which may have resulted. (*Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182.) Although defendants were indicted on July 19, 1974, they did not assert their rights to a speedy trial until August 16, 1976, when they filed a motion to dismiss for failure to prosecute. We must agree with the trial court that defendants exercised their option to forego a speedy trial in the hopes that the Illinois Supreme Court would find the Controlled Substances Act unconstitutional. Defendants benefitted from the State's decision not to prosecute offenses under this statute until a final disposition in *People v. Mayberry*. Had the State proceeded to trial prior to the Supreme Court's decision in *Mayberry*, defendants would have faced the risk of being convicted and incarcerated under a statute which might later be held

invalid. Since the record indicates that defendants acquiesced in the delay between indictment and trial, we do not believe that they were denied their rights to a speedy trial. *People v. Fosdick*, 36 Ill. 2d 524, 224 N.E.2d 242.

■■ Defendant next contends that the trial court erred in admitting into evidence the results of the State's chemical analysis because the 100 tablets tested were not shown to have a significant statistical relation to the 10,000 tablets sold by defendants to the IBI agents. It is generally held that an expert opinion as to the nature of a particular substance may be based upon an analysis of a small amount of that substance. (*People v. Kline*, 41 Ill. App. 3d 261, 354 N.E.2d 46; *People v. Hering*, 27 Ill. App. 3d 936, 327 N.E.2d 583; *People v. Ohley*, 15 Ill. App. 3d 125, 303 N.E.2d 761, *cert. denied*, 417 U.S. 962, 41 L. Ed. 2d 1135, 94 S. Ct. 3163.) In *Hering* an analysis of 30 out of 100 tablets was held sufficient to support a conclusion that all 100 contained LSD. In *Ohley* we held that an analysis of 6 out of 89 tablets was adequate to support an expert's opinion that all 89 contained LSD. The determination of whether a particular substance is within the prohibitions of the Controlled Substances Act is a question of fact for the jury. (*People v. Harrison*, 26 Ill. 2d 377, 186 N.E.2d 657.) Although all 10,000 tablets were admitted into evidence, the State's chemist testified that he had analyzed only 100 and that he therefore could not state with certainty that all 10,000 contained amphetamine. We believe that the chemist's opinion was properly admitted and that it was for the jury to determine the weight to be given this expert opinion in light of the methods by which it was reached.

■■ Defendants' final contention that they were not proven guilty beyond a reasonable doubt is without merit. It is well settled that a reviewing court will set aside a jury verdict of guilty if it has reasonable or well-founded doubt of the guilt of the accused. (*People v. Ritchie*, 36 Ill. 2d 392, 395, 222 N.E.2d 479.) In this case the State presented testimony of the IBI agents who participated in the drug transaction. A chemist testified that the drug exchanged was amphetamine. One defendant, Christine McCord, testified that the sale did in fact occur but denied that she participated in it. We believe there was sufficient evidence upon which the jury could find both defendants guilty beyond a reasonable doubt of unlawful delivery of a controlled substance.

We now consider the issue of conflict of interest raised in the supplemental brief filed on behalf of Christine McCord by the State Appellate Defender.

Defendant contends that she was denied effective assistance of counsel guaranteed by the sixth amendment of the Constitution of the United States because both she and her husband were represented by the same attorney at their joint trial. She claims that she did not receive the

undivided loyalty of her lawyer because of the conflicting duty he owed to her husband, the co-defendant. Neither of the co-defendants made any motions for separate counsel either before or after the trial.

In *Glasser v. United States*, 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, the United States Supreme Court held that by requiring an attorney to represent two co-defendants whose interests were in conflict, the district court had denied one of the defendants his sixth amendment right to the effective assistance of counsel. In that case the government tried five co-defendants in a joint trial for conspiracy to defraud the United States. Two of the defendants, Glasser and Kretske, were represented initially by separate counsel. On the second day of trial, however, Kretske became dissatisfied with his attorney and dismissed him. The district judge thereupon asked Glasser's attorney, Stewart, if he would also represent Kretske. Stewart responded by noting a possible conflict of interests: his representation of both Glasser and Kretske might lead the jury to link the two men together. Glasser also made known that he objected to the proposal. The district court nevertheless appointed Stewart, who continued as Glasser's retained counsel, to represent Kretske. Both men were convicted.

Glasser contended that Stewart's representation at trial was ineffective because of conflicts between the interests of his two clients. The record disclosed that Stewart failed to cross-examine a government witness whose testimony linked Glasser with the conspiracy and failed to object to the admission of arguably inadmissible evidence. This failure was viewed by the court as a result of Stewart's desire to protect Kretske's interests, and was thus "indicative of Stewart's struggle to serve two masters * * *." (315 U.S. 60, 75, 86 L. Ed. 2d 680, 702, 62 S. Ct. 457, ___.) After identifying this conflict of interests, the court declined to inquire whether the prejudice flowing from it was harmless and instead ordered Glasser's conviction reversed.

■■ In *Holloway v. Arkansas*, ___ U.S. ___, 55 L. Ed. 2d 426, 98 S. Ct. 1173, the appellants who were co-defendants at trial made timely motions for separate counsel based on the representations of their appointed counsel that because of confidential information received from the co-defendants, he was confronted with the risk of representing conflicting interests and could not therefore provide effective assistance for each client. The trial court denied the motion and all of the defendants were convicted. The Supreme Court, relying on *Glasser*, held that the trial judge's failure either to appoint a separate counsel or to take adequate steps to ascertain whether the risk of a conflict of interests was too remote to warrant separate counsel, in the face of the representations made by counsel before trial and again before the jury was empaneled, deprived petitioners of the guarantee of assistance of counsel under the sixth

amendment. An attorney's request for the appointment of separate counsel, based on his representations regarding a conflict of interests, should be granted, considering that he is in the best position professionally and ethically to determine when such a conflict exists or will probably develop at trial; that he has the obligation, upon discovering such a conflict, to advise the court at once, and, that as an officer of the court, he so advises the court virtually under oath.

In this case neither the defendant Gary McCord nor Christine McCord made any motions for separate counsel either before or after the trial. Had either of them made such a motion, it would probably have been granted because in *Holloway* the United States Supreme Court said:

> "Additionally, since the decision in Glasser, most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. [Citations.] In so holding, the courts have acknowledged and given effect to several interrelated considerations. An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' [Citation.] Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. * * * Finally, attorneys are officers of the court, and ' "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." ' [Citation.] We find these considerations persuasive." ___ U.S. ___, ___, 55 L. Ed. 2d 426, 435, 98 S. Ct. 1173, 1179.

■■ The right to counsel at trial guaranteed by the sixth amendment of the United States Constitution does not include an automatic right to separate counsel for each co-defendant. One counsel may represent more than one defendant so long as the representation is effective. In *Holloway* the court said:

> "One principle applicable here emerges from *Glasser* without ambiguity. Requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: 'Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common

attack.' [Citation.]" ___ U.S. ___, ___, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1178.

In *Holloway* the Supreme Court also stated that since the decision in *Glasser* the courts have taken divergent approaches to two issues commonly raised in challenges to joint representation where the trial counsel did nothing to advise the trial court of the actuality or possibility of conflict of interest by his joint representation of co-defendants. First, appellate courts have differed on how strong a showing of conflict must be made before it would conclude that the defendants were deprived of their right to effective counsel and second the courts have differed with respect to the scope and nature of the affirmative duty of the trial judge to assure that criminal defendants are not deprived of their right to the effective assistance of counsel. However, since neither of these problems was presented in the *Holloway* case, the Supreme Court declined to pass on them.

However, the language of the *Holloway* opinion convinces us that when this problem does reach the Supreme Court it will decide that when nothing is done by the trial attorney to point out a conflict or possible conflict of interest to the trial court, the Supreme Court will rule that more than a possibility of conflict of interest will be required to mandate a reversal. The Supreme Court in *Holloway* said that the attorney is in the best position to determine when a conflict of interest exists. It also said that joint representation is not a per se violation of constitutional guarantees of effective assistance of counsel. This surely means that the trial proceedings are presumptively valid and that the lawyer has presumptively advised his clients of any possible conflicts of interest. We must presume that lawyers who are licensed to practice law by our highest courts are presumed to know the law. We must also presume, unless proven otherwise, that they will properly carry out their duties toward their clients.

■■ We also conclude that the Supreme Court will hold that the trial court has no affirmative duty to make inquiries of the lawyer or his clients to assure that criminal defendants are not deprived of their right to effective assistance of counsel by joint representation of co-defendants in the absence of a motion by the attorney calling the court's attention to this problem. This problem will be left to the attorneys who have the duty to represent their clients to the best of their ability through every stage of the proceedings. Since they have this responsibility and since they are in the best position to determine when a conflict of interest exists or will develop, the trial court must assume in the absence of an apparent conflict that as officers of the court they have performed their duty. The language of the Supreme Court in *Holloway* outlining the duties and

responsibilities and the importance of the lawyer in the representation of those charged with crime leads us to believe that when this problem comes before the United States Supreme Court it will hold that the trial courts must assume from a silent record that a lawyer is not in a duplicitous position and that he is representing all of his clients in their best interests to the best of his ability.

In *United States v. Mandell* (7th Cir. 1975), 525 F.2d 671, the court held the three co-defendants were not denied effective representation in being represented by one counsel despite the contention that they were not equally culpable; that the primary responsibility for the ascertainment and avoidance of conflict must lie with the members of the bar; that the sixth amendment rights of defendants are adequately safeguarded by imposing the duty of informing defendants of the potential dangers of multiclient representation, initially on the attorneys as officers of the court, and by admonishing the trial judges to be watchful for indicia of conflict during the trial. The *Mandell* court then reasoned that since the trial court had no affirmative duty to inquire of the defendants whether they were cognizant of the rules of conflict in this case, that it was incumbent upon the defendants to demonstrate with a reasonable degree of specificity that a conflict of interest actually existed at trial.

In so holding, the *Mandell* court considered and rejected the rationale of the United States Court of Appeals of the District of Columbia which held that unless the record affirmatively discloses that the defendants were advised by the trial court of their right to be represented by separate counsel, the burden shifted to the Government to prove beyond a reasonable doubt that a prejudicial conflict of interest did not exist. In so doing, the *Mandell* court said:

"Both the Third and First Circuits have also indicated the desirability of the trial judge affirmatively inquiring of multiple defendants represented by a single defense counsel to determine whether they are cognizant of the risks of conflict of interests and whether, in the light of those risks, they still wish to maintain their common representation. [Citations.]

Other circuits have not adopted such a requirement, however: [Citations.] They would not require the trial judge to act affirmatively to ascertain whether a conflict existed unless, in the words of *Boudreaux*, there was 'objection, claim [or] notice to the court of any alleged conflict between the interests of the defendants.' [Citation.] The harshest criticism of any rule involving the trial judge in such an inquiry has come from the Second Circuit. In *Paz-Sierra*, 367 F.2d at 932-933, Judge Moore explained:

'The ramifications of the situation in which the court in advance of trial arrogates to itself the function of determining whether the

"co-defendants have intelligently chosen to be represented by the same attorney" are so great as to cause this Court to doubt the wisdom of adopting the proposition that an affirmative determination be made by the trial court that the defendant has "intelligently chosen to be represented by the same attorney." No facts have thus far been presented that the Bar of this country is so unmindful of the canons of ethics and its obligation to avoid positions of conflict as to call for a pre-trial cross-examination of defendants and their counsel on the theory, or even presumptuous presumption, that counsel will not be faithful to the best interests of their clients and when aware of any conflict of interest between clients jointly represented whether before or during trial will not disclose it to the court and seek appropriate relief. Furthermore, should it appear that a defendant was in fact prejudiced by the sharing of counsel, he would be even more prejudiced in raising this point on appeal by the trial court's a priori finding that there was no prejudice likely to occur in proceeding with the shared counsel. An appellate court could almost take judicial notice of the fact that in a joint representation situation, if one defendant were convicted and the other acquitted, appellate counsel would argue prejudice as to the convicted defendant. Hindsight being what it is, a wiser approach might well be to leave to the members of the Bar the avoidance of cases of apparent prejudice by their refusal to represent clients with conflicting interests.' " 525 F.2d 671, 676-77.

■■ We agree with the *Mandell* court and hold that the sixth amendment rights of defendants are adequately protected by imposing the duty of informing defendants of the potential dangers of joint representation. We expressly hold that the trial court has no duty in this regard unless this conflict is called to the attention of the court in some way by the attorney or by one of the co-defendants, or unless the conflict is apparent. We also believe that forcing trial judges to make this inquiry would hinder rather than help the defendants in their rights to effective assistance of counsel. We also hold that when the court is not made aware of the conflict either before or during the trial, it is incumbent upon the defendant to demonstrate with a reasonable degree of specificity that a conflict actually exists.

Does this record disclose that Christine McCord was denied effective assistance of counsel by reason of the fact that one attorney represented both her and her husband at the trial of this case? Defendant's husband did not testify. Defendant testified on her own behalf. She admitted the delivery occurred in the kitchen while she was there but denied that she participated in the delivery. She denied the two undercover agents'

testimony that she stacked the drugs and counted the $1250 paid for them. Instead she testified that it was her husband who counted and obtained the money and bagged the drugs. Her lawyer blamed her husband for the crime and argued:

> "* * * I hope that I have done the best job I can for these people. Especially Chris who wasn't even involved in this thing except to be in that house. And, what was she supposed to do? What does [the prosecutor] want her to do, go out in the back yard with the kid? Go out. and sit in the back yard with the kid?"

■■ Defendant now contends she may have gained many benefits if her case had been severed from her husband's. In a separate trial she may have called her husband to corroborate her story. Her trial lawyer may have failed to present additional favorable evidence in her behalf because of his obligation to her husband. Furthermore, she argues counsel's joint representation of her and her husband may have denied her the right to turn State's evidence against her husband in return for her plea to a lesser charge. Thus the defendant points out a possibility that she did not receive the undivided loyalty of her lawyer. However, these facts do not demonstrate a reasonable basis to hold that a conflict actually existed. It appears more apparent to us that the trial strategy in this case was for the husband to take the blame in the hope that the jury would exonerate his wife.

For the foregoing reasons the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS, J., concurs.

Mr. PRESIDING JUSTICE EBERSPACHER, specially concurring:

I concur in the affirmance of the judgments entered, but with regard to the claim by Christine McCord of a conflict of interest, emphasis must be placed on the distinctive fact that trial counsel herein was privately retained.

The sixth amendment allows co-defendants the freedom to choose to hire the services of a single attorney to mutually represent all of them. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Holloway v. Arkansas* (1978), ___ U.S. ___, 55 L. Ed. 2d 466, 98 S. Ct. 1173. Compare *People v. Somerville* (1969), 42 Ill. 2d 1, 245 N.E.2d 461; *People v. Craig* (1977), 47 Ill. App. 3d 242, 361 N.E.2d 736 with *People v. Cross* (1975), 30 Ill. App. 3d 199, 331 N.E.2d 643; *People v. Grigsby* (1977), 47 Ill. App. 3d 812, 365 N.E.2d 481.) Under most circumstances, where counsel has been privately retained by co-defendants, such reflects a voluntary and intelligently made choice by them. While this choice may

foreclose certain avenues of defense, it may also concomitantly open other avenues or may result in other reciprocal benefits, such as in cost and expediency, which the co-defendants prefer. As stated by Justice Frankfurter in *Glasser*: "There are advantages and disadvantages in having separate counsel for each defendant or a single counsel for more than one. Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack." (315 U.S. 60, 92, 86 L. Ed. 680, 710-11, 62 S. Ct. 457, 475.) In most of these instances, there is a natural trade-off by the co-defendants of certain of their individual interests in favor of other such interests.

However, in cases in which counsel has been appointed to represent multiple defendants, stricter scrutiny has been employed to guard against possible conflicts of interests. (*People v. Frey* (1977), 50 Ill. App. 3d 437, 365 N.E.2d 283; *People v. Meng*, 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169; *People v. Ishman* and *Bogay* (1978), 61 Ill. App. 3d 517, 378 N.E.2d 179; *People v. Baxtrom* (1978), 61 Ill. App. 3d 546, 378 N.E.2d 182.) In such instances, a court order requiring a defendant to share his attorney's services with his co-defendants is rarely, if ever, based upon the benefits to be accrued to that defendant but rather is likely to be based only upon considerations of economy and expediency benefiting the interests of the State. A court appointment of counsel reflects no choice on the part of a defendant. Thus implicit in a court order requiring multiple client representation is the determination that such representation will be appropriate, effective and free of possible conflicts of interest. (See *People v. Bopp* (1917), 279 Ill. 184, 116 N.E. 679.) Further, the court thereby assumes an affirmative obligation to anticipate possible conflicts of interests.

In the case at bar, Christine McCord chose to be represented by the same privately retained attorney who represented her husband. Despite the broad language of our supreme court in *People v. Stoval* (1968), 40 Ill. 2d 109, 113, 239 N.E.2d 441, 444, and *People v. Coslet* (1977), 67 Ill. 2d 127, 133, 364 N.E.2d 67, 70, which cases involved court appointed counsel, I do not think that Illinois courts are willing to go as far as the New Jersey Supreme Court has in *State v. Land* (1977), 73 N.J. 24, 372 A.2d 297, a case involving privately retained counsel representing a husband and wife. Although Christine may have yielded certain possible avenues of defense, this alone under the circumstances does not justify the conclusion that she was denied her right to assistance of counsel.