THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL NEAFUS, Defendant-Appellant.

Fifth District    No. 75-165

Opinion filed June 10, 1976.

366

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This cause is an appeal by the defendant, Carl Neafus, from a judgment of conviction for the crimes of taking indecent liberties with a child and contributing to the sexual delinquency of a child, entered by the circuit court of Williamson County pursuant to a jury verdict of guilty.

The defendant was arrested on October 17, 1972, and was held on a two-count information charging the above noted crimes. The indecent liberties charge was premised upon the defendant's alleged performance of an act of deviate sexual conduct upon a female child of five years of age; the contributing to the sexual delinquency charge was premised upon the defendant's alleged performance of a lewd act done in the presence of that child, *i.e.*, the display of pictures of nudes, with the intent to arouse the defendant's sexual desires.

A bill of indictment was returned November 15, 1972. The defendant's father filed a petition for hospitalization on November 21, 1972. A hearing was held on November 24, 1972, at which time the court found the defendant in need of mental treatment. The defendant was ordered hospitalized. He indicated to the court that he understood the proceedings and agreed to the commitment. At all times pertinent, the defendant was represented by counsel. The defendant was released from jail November 24, 1972, and was taken to the Anna State Hospital.

Defendant was discharged absolutely from the hospital April 13, 1973, and was released into his own custody.

The State filed discovery motions against the defendant on January 18, 1974. Trial commenced January 6, 1975. Defendant was convicted of both counts and sentenced to the State penitentiary to serve a term of from 6 2/3 years to 20 years.

The first issue presented on this appeal is whether the defendant was denied his constitutional right under the Sixth Amendment to the United States Constitution to a speedy trial, and whether or not he properly preserved the issue for appeal to this court.

In *People v. Price*, 32 Ill. App. 3d 610, 336 N.E.2d 56, the defendant was convicted of involuntary manslaughter. In his motion for arrest of judgment, or motion for new trial, defendant did not raise the question of whether he was denied a speedy trial. The court said at page 612:

> "* * * [W]e consider the fact that neither the defendant's oral argument on his post-trial motion nor the motion itself contained any reference to his contention that he was denied a speedy trial a waiver of such contention. We further note that defendant made neither an oral nor written motion for a speedy trial; and was admitted to bail on the day of his arrest."

Defendant Neafus did not properly preserve this issue at the trial level. Even had he done so in his post-trial motion, this court, applying the rule of *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, would find that the defendant's fundamental right to a speedy trial had not been abridged. We consider the matter here only because of the contention that failure to raise the issue below is the foundation of defendant's contention that he was denied effective counsel and competency of counsel.

The United States Supreme Court has formulated a balancing test for determining when the right to a speedy trial has been denied. The court said:

> "The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

### IV

> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." 407 U.S. 514, 530-31, 33 L. Ed. 2d 101, 116-17, 92 S. Ct. 2182.

In this case the length of delay was 26 months from arrest to trial in what could be considered an "ordinary street" crime which would not require extensive factual investigation or preparation. Clearly the other factors should be investigated.

No cause is assigned for the delay by the State. The defendant does not state or intimate that the delay by the State was done to hamper the defense nor does he attempt to assign any reason. The two major arguments which both sides present forcefully are the defendant's failure to assert the right to speedy trial at any time before appeal, and the question of whether the defendant was prejudiced by the delay.

The United States Supreme Court's analysis of the defendant's responsibility to assert his right is discussed in *Barker v. Wingo*. The Court said:

"Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.*" (Emphasis added.) 407 U.S. 514, 531-32, 33 L. Ed. 2d 101, 117-18, 92 S. Ct. 2182.

Finally, we must consider whether the defendant was prejudiced by the delay. In *Barker v. Wingo*, the Court said:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the

defense will be impaired." (407 U.S. 514, 532, 33 L. Ed. 2d 101, 118, 92 S. Ct. 2182.)

In the case before us, we find that the defendant was not prejudiced in any of these three ways. He spent slightly more than one month incarcerated which cannot be characterized as oppressive. It doesn't appear that he suffered anxiety and concern because of the delay. At page 11 of the appellant's brief, it is stated:

"Thereafter [the release from custody in November, 1972] he clearly was under the impression that no trial was going to be held. Upon his admission to the hospital he had informed its officials that all the charges against him had been dropped (C. 35). When he obtained his absolute discharge and was released in April of 1973, he obviously and naturally believed that no further action was going to be taken against him for the alleged incident."

Also, the record indicates that the defense was not hampered by the delay. In fact, the great possibility exists that the delay was of benefit to the defendant. He had an opportunity over the two years between release and trial to work and demonstrate his lasting rehabilitation and cure. With the passage of time, the State's witnesses might have moved away or lost interest in the defendant's prosecution. As a matter of fact, the victim had moved to Arkansas by the time of trial.

■■ The failure to make a demand for speedy trial, and the lack of prejudice suffered by the defendant lead us to conclude that the defendant's right to a speedy trial was not abridged. We do so despite defendant's argument on appeal, to which we now turn, that trial counsel was incompetent, and therefore, the failure to demand speedy trial should be given less weight. No showing of incompetency is made. Trial counsel presented a well-developed theory of the case at trial, and properly preserved issues for appeal. His behavior prior to trial in not demanding a trial is equally understandable. So long as the State was willing to defer prosecution, defendant's interests could best be served by not bringing undue attention to the matter. The best posture for the defense at the time was to let time go by, and let the case be forgotten or dismissed at a later date. The defendant's attorney did not raise the constitutional speedy trial issue at the time of trial, nor did he argue that section 103—5's 120-day rule (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) had been violated. This does not constitute incompetence in this case.

We find that the defendant's right to a speedy trial in this cause under the Sixth Amendment of the United States Constitution, and the Illinois Constitution of 1970, article 1, section 8, was not abridged or denied.

■■ Defendant's second ground for appeal in this cause is the argument that defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution

and by article I, section 8, of the Illinois Constitution when his attorney failed to move for discharge for want of prosecution of his case within 120 days of his arrest. This argument presumes that the defendant was entitled to the benefit of the operation of section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1973, ch. 38, par. 103—5). That statute provides in material part:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal."

In *People v. Hannah*, 31 Ill. App. 3d 1087, 335 N.E.2d 84, a defendant was involuntarily committed to the East Moline State Hospital on June 6, 1973, after his arrest on the previous day, June 5, 1973. He was held there until August 9, 1973, when he was returned to the custody of the Rock Island County Jail. On November 13, 1973, the defendant filed a motion to dismiss under section 103—5 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) which was granted, and affirmed.

There is a vital distinction between that case and the one before us. Here the defendant voluntarily went to the Anna State Hospital after the request was made by his father. This interlude was an actual delay occasioned by the defendant, and therefore, the running of the statutory 120-day period was tolled. At the conclusion of defendant Neafus' stay at the Hospital, he was discharged, and was not reimprisoned as was the case in *People v. Hannah*. If he had been, the 120-day period would have begun anew on that date. (See *People v. Hannah*, at 1089.) Since the defendant voluntarily went to Anna State Hospital, the statute was tolled because it was a delay occasioned by the defendant. Because Neafus was not taken back into custody upon his release, the statutory period did not begin to run anew.

Therefore, the failure of defendant's attorney to demand release by motion under section 103—5 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) was not an error by defendant's trial counsel. Defendant has not been denied his right to effective counsel under the Sixth Amendment to the United States Constitution and the Illinois Constitution of 1970, article I, section 8. His attorney was correct in not asserting the right to release under section 103—5 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5). Defendant was not prejudiced by the omission, since he was not entitled to the benefit of the 120-day rule. We do not reach, and therefore do not consider, the

question of whether failure of defense counsel to make a timely motion for dismissal under the 120-day rule does or does not constitute *per se* ineffective representation.

■■ Defendant contends he was substantially prejudiced when the trial court restricted his cross-examination of the complaining witness regarding her earliest accounts of the alleged occurrence. Defendant failed to file a motion for a new trial. Failure to raise an issue in a written motion for a new trial generally constitutes a waiver of that issue. The rule is well stated in *People v. Pickett*, 54 Ill. 2d 280, 282-83, 296 N.E.2d 856:

> "The general rule followed by this court is that the failure by the defendant to raise an issue in the written motion for new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. (*People v. Nelson*, 41 Ill. 2d 364, 366; *People v. Harris*, 33 Ill. 2d 389, 390, *People v. Irwin*, 32 Ill. 2d 441, 443; *People v. Touhy*, 31 Ill. 2d 236, 240; *People v. Greer*, 30 Ill. 2d 415, 417; *People v. Needham*, 22 Ill. 2d 258, 259.) This waiver rule applies to constitutional questions as well as to other issues. (*People v. Long*, 39 Ill. 2d 40, 43; *People v. Blec*, 52 Ill. 2d 544, 551.) * * * As this court stated in *People v. Burson*, 11 Ill. 2d 360, at 370: 'The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing on the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.' "

We have examined, in addition, the issue of whether defendant's cross-examination was unduly limited in this action under the rule of *People v. Burson*. After a review of the transcript we find that the contention is without merit. The scope and extent of cross-examination rests largely in the discretion of the court. (*People v. Moretti*, 6 Ill. 2d 494, 129 N.E.2d 709, *cert. denied*, 356 U.S. 947, 2 L. Ed. 2d 822, 78 S. Ct. 794.) A trial court's ruling will not be interfered with by the reviewing court unless presented with a case of clear abuse of discretion resulting in manifest prejudice to the defendant. (*Chamness v. Dawson*, 44 Ill. App. 2d 176, 194 N.E.2d 538.) It is true that the accused should be given wide latitude in cross-examination of the prosecutrix in a sex case. (*People v. Malston*, 122 Ill. App. 2d 466, 258 N.E.2d 362, 364.) However, in this case, we do not find that the trial court abused its discretion.

The defendant next contends that the trial court erred when it entered judgments of guilty of both taking indecent liberties with a child and contributing to the sexual delinquency of a child. The argument of defendant is that he committed only one act, if any, and that there were two judgments of conviction entered. Defendant contends that the entering of judgment on the charge of contributing to the sexual

delinquency of a child may operate to the defendant's prejudice even though no sentence was imposed on it. Defendant relies on *People v. Lilly*, 56 Ill. 2d 493, 309 N.E.2d 1. In that case there was no dispute that both verdicts were based on a single act of the defendant. The court held at page 495:

> "The defendant is correct in his first contention, which is that the trial court erred in entering judgment on the verdict of guilty on the indecent liberties charge. It is not disputed that the rape count and indecent liberties count of the indictment were founded on a single act of the defendant. Under such circumstances there can be but one conviction of crime. (*People v. Duszkewycz*, 27 Ill. 2d 257; *People v. Schlenger*, 13 Ill. 2d 63.)"

■■ However, in the case before us, there is a dispute as to whether there were two acts or one. At trial below the defendant was found to have committed two acts. He took indecent liberties when he fondled the child. He contributed to the sexual delinquency of the child by performing a lewd act in the presence of the child, namely displaying of pictures of nude men and women to her with the intent to arouse his own sexual desires. Defendant was found to have committed two acts, and was tried and convicted of both. We do not find that this determination is contrary to the manifest weight of the evidence. The charge of contributing to the sexual delinquency of the child is affirmed. See *People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133; *People v. Elliott*, 32 Ill. App. 3d 654.

■■ The last issue is whether the sentence imposed by the court of 6 2/3 to 20 years was excessive. The court observed that defendant had previously been convicted of two felonies, one of which was aggravated battery and the other was criminal damage to property involving derailment of a train. At the time of these offenses defendant was on probation and had a record of violence. Under such circumstances we will not say that the court's finding that imprisonment was necessary for the protection of the public and the imposition of this sentence was an abuse of discretion.

We therefore affirm.

G. J. MORAN and JONES, JJ., concur.