THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR D. CANNES *et al.*, Defendants-Appellants.

Second District   No. 77-178

Opinion filed June 29, 1978.

Canfield Law Offices, of Rockford, for appellants.

William J. Cowlin, State's Attorney, of McHenry (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

As a result of a shooting incident on August 25, 1974, the defendants-appellants, Arthur D. Cannes and John Powell, hereafter collectively referred to as the defendants, were each charged by way of an indictment with two counts of attempt murder, two counts of armed violence, two counts of aggravated assault, and one count of unlawful use of weapons. The defendants were tried before a jury in McHenry County circuit court, and each was found guilty on both counts of armed violence, both counts of aggravated assault, and of unlawful use of weapons. The defendants were found not guilty on the attempt murder charges. The trial judge, Charles S. Parker, vacated the unlawful use of weapons

conviction and sentenced each defendant to two terms of one to three years on the armed violence convictions, the sentences to be served concurrently. The defendants have appealed, raising a total of nine issues as possible grounds for reversing their convictions. Those issues are: (1) That they were denied their constitutional right to a speedy trial; (2) That certain incriminating statements were obtained from them in violation of their *Miranda* rights; (3) That the State's Attorney improperly indicted the defendants for both armed violence and aggravated assault; (4) That the counts in the indictment charging the defendants with aggravated assault were defective; (5) That the trial court should have granted the defendants' motion for a directed verdict on the armed violence and aggravated assault charges; (6) That the jury was improperly instructed on the charges of armed violence and aggravated assault; (7) That the defendants were improperly convicted of both armed violence and aggravated assault; (8) That the defendants were not proved guilty of any offense beyond a reasonable doubt; and (9) That they were improperly sentenced.

After reviewing the evidence and considering the arguments presented, we are of the opinion that with the exception of allowing the convictions for aggravated assault to stand, the judgment of the circuit court of McHenry County must be affirmed.

The incident which is the basis for all the charges in this case occurred in Huntley, Illinois, during the early morning hours of August 25, 1974. The defendants had spent part of the previous day target shooting with the defendant Cannes' .357 magnum. After the target shooting session, the defendants went to a bar in Belvidere where they were eventually joined by Mrs. Powell and Alice Payton. The two couples stayed at the Belvidere bar until shortly before its 1 a.m. closing time and then journeyed to a bar in Marengo which stayed open until 2 a.m. When the Marengo bar was preparing to close, the couples drove on to Huntley to patronize Coleman's Tap, which had a 4 a.m. closing time.

From the testimony, it appears that upon entering Coleman's Tap the two women went to the ladies' room, Powell went to the men's room, and Cannes went to the bar to procure liquid refreshments for the party. Mrs. Powell exited the ladies' room first and proceeded to join Cannes, who had secured a table as well as the drinks. Thereupon Mrs. Powell was approached by one Bennie Smith, who slapped her on her posterior and expressed a desire to have carnal knowledge of her, although paraphrasing in heavy vernacular. A scuffle between Cannes and the 6′6″, 270-pound Mr. Smith ensued. Powell exited the men's room just as the scuffle was ending. After the incident, the defendants and their female companions left the tavern and went to one of the two cars in which they had driven to Huntley. There they discussed the events that had just

occurred in the tavern. When Powell learned what had happened, he became quite upset and was determined to have Mr. Smith apologize for his insulting behavior towards Mrs. Powell. Cannes attempted to calm the irate Powell as the two waited outside the tavern. The two women had been sent home in one of the cars.

Near closing time Powell entered the bar while Cannes remained behind at the car. At trial, Cannes testified that he became concerned with the length of time Powell was in the bar, so he got out and loaded the .357 magnum which was in the back of the car. As Powell left the bar he was followed almost immediately by Mr. Smith and his party, who had the general appearance of being a motorcycle gang. Cannes claims he became fearful for his and Powell's safety, so he fired four shots into the air. After firing the shots, the defendants attempted to leave the scene but were apprehended about a block away by the Huntley police.

After being arrested, the defendants were taken to Huntley's one-room police station. The defendants were given their *Miranda* warnings, after which they made some incriminating statements which were testified to at trial by Officer Donald McKeating. According to Officer McKeating, the defendants stated that they had flipped a coin to decide who would do the shooting and that Cannes won. Powell is reported to have claimed that if he had won there would have been four dead people. Officer McKeating's testimony was largely corroborated by that of Officer Donald Thomas. While the defendants were being questioned, several patrons of Coleman's Tap were milling in and about the police station, including Mr. Smith, who got into some sort of argument with the defendants.

On September 3, 1974, a McHenry County grand jury handed down a seven-count indictment against the defendants. Count I of the indictment charged each defendant with the attempt murder of Bennie Smith. Count II charged the defendants with the attempt murder of Silas Christian, a companion of Mr. Smith. Counts III and IV charged the defendants with armed violence toward the same men. Counts V and VI charged the defendants with the aggravated assault of Messrs. Smith and Christian. Count VII was the unlawful use of weapons charge.

The defendants were brought to trial on April 8, 1976, some 19 months after the indictment was handed down. However, at no time had the defendants made a demand for a speedy trial pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5). In its case, the State presented the testimony of two members of Mr. Smith's party, who testified that they were in fear of their safety upon hearing the shots, and the testimony of two Huntley police officers who witnessed the shootings. Both officers testified that from the flashes of the discharging gun, they could tell the shots were fired in the

general direction of the tavern from which Mr. Smith and his party were exiting. The State also presented photographic evidence of fresh damage to the building which it alleged was caused by the bullets from the .357 magnum.

■■ The first of the defendants' nine contentions is that the delay of 19 months between the date they were indicted and the date they were brought to trial violated their constitutional right to a speedy trial. Inasmuch as the defendants failed to demonstrate that they were prejudiced by the delay, we hold that the defendants were not denied their constitutional right to a speedy trial.

We begin our discussion of this issue by noting that the defendants did not make a demand for a speedy trial pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5). Therefore, that statutorial right does not come into play here. *People v. Wyatt* (1977), 47 Ill. App. 3d 686, 365 N.E.2d 373.

■■ In making a determination of whether or not a defendant's constitutional right to a speedy trial has been violated, a balance must be struck between the State's right to prosecute and the defendant's right to a speedy trial. Among the factors to be considered in balancing these conflicting rights are the length of the delay, the reasons for the delay, and the resulting prejudice to the defendant. (*Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182.) In the case at hand, the sole offered explanation for the long delay in bringing the defendants to trial was the crowded condition of the court's calendar. Furthermore, the defendants do not claim that the delay prejudiced in any way their ability to present their defense. The sole basis for their contention that they were denied their constitutional right to a speedy trial is the length of the delay. While we do not condone the 19-month delay involved in the case at hand, we do not find it to be sufficient in and of itself to constitute a violation of the defendants' constitutional right to a speedy trial.

Secondly, the defendants contend that their inculpatory statements were obtained in violation of their constitutional rights as enunciated by the United States Supreme Court in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The basis of this contention is the fact that while the defendants were being questioned by the police, several patrons of Coleman's Tap, including Mr. Smith, were permitted to mill in and about the one-room Huntley police station. This, the defendants argue, created such a coercive environment as to make the waiver of their *Miranda* rights involuntary. We disagree.

■■ The question of the voluntariness of an inculpatory statement is for the trial court to determine upon a consideration of the totality of the surrounding circumstances. (*People v. White* (1977), 48 Ill. App. 3d 907, 363 N.E.2d 408.) In making such a determination the trial court need not

be convinced beyond a reasonable doubt that the statement was voluntarily made. (*People v. Charboneau* (1977), 46 Ill. App. 3d 686, 361 N.E.2d 125.) Furthermore, the trial court's determination of the admissibility of a statement will not be reversed on review unless it is contrary to the manifest weight of the evidence. (*In re Lamb* (1975), 61 Ill. 2d 383, 336 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.) Upon reviewing the record, we are convinced that there was ample evidence to support the trial court's decision to admit the statements into evidence. While undoubtedly it would have been better police procedure to have questioned the defendants while they were isolated from the patrons of Coleman's Tap—and in particular, from Mr. Smith—we do not believe the record demonstrates that the failure to do so created such a coercive environment as to render the defendants' inculpatory statements involuntary.

■■■ Next, we turn to a series of arguments the defendants have made in respect to the armed violence and aggravated assault charges. As a result of the same conduct, the defendants were charged with the Class 4 felony of armed violence (sections 33A-2, 33A-3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 33A-2, 33A-3)) and the Class A misdemeanor of aggravated assault (section 12—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—2)). The defendants contend that the State's Attorney had the obligation to charge them with one or the other, but not both. By charging them with both, the defendants argue that the State's Attorney violated their constitutional right to equal protection of the law. We are in full accord with the Third District, which rejected this same argument in *People v. Graham* (1975), 25 Ill. App. 3d 853, 323 N.E.2d 441. Secondly, the defendants assert that the indictment for aggravated assault was defective because it failed to allege the defendants acted with the "intent" to commit assault and, therefore, their motion at the close of the State's case for a directed verdict should have been granted. We find these arguments to be without merit. First of all, we note that the defendants have attacked the indictment for the first time on appeal. Therefore, the standard set forth in *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437, is applicable. We find the indictment for aggravated assault was sufficiently specific to inform the defendants of the precise charge against them and to act as a bar to subsequent prosecutions. Therefore, the *Pujoue* test has been satisfied. Furthermore, assault is not a specific intent crime. (*People v. Vanable* (1973), 11 Ill. App. 3d 758, 298 N.E.2d 299.) Therefore, any of the mental states defined in sections 4—4 (intent), 4—5 (knowledge), or 4—6 (recklessness) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 4—4, 4—5, 4—6) is sufficient to support a conviction for aggravated assault performed with

a deadly weapon as defined by section 12—2(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)).

■■■ Next, the defendants assert that the jury instructions given on the armed violence and aggravated assault charges were so confusing to the jury that the jury incorrectly found the defendants guilty of both crimes. As the instructions given accurately stated the law, the trial court did not err in giving them. However, as the State concedes, since the convictions for aggravated assault and armed violence arose out of the same conduct, the convictions for both crimes cannot stand. Therefore, the trial court erred by not vacating the aggravated assault convictions.

The defendants' next contention is that they were not proved guilty beyond a reasonable doubt. The defendants base this argument largely on the fact that Bennie Smith did not testify at trial despite being subpoenaed by the State. Because Mr. Smith did not testify, the defendants contend the State did not show he was placed in reasonable apprehension of being shot—which is necessary to sustain the defendants' conviction for armed violence towards him. As to the counts alleging the defendants committed armed violence towards Silas Christian, the defendants argue those counts were not proved because there was no showing of animosity between the defendants and Silas Christian. We find this argument to be unpersuasive.

■■ A person commits the crime of armed violence if, while armed with a dangerous weapon, he performs, among other offenses, an aggravated assault. (Section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 33A—2).) In the case at hand, it is undisputed that the defendants acted while armed with a dangerous weapon. The sole remaining question is whether or not the victims were placed in a reasonable apprehension of receiving a battery. That question is a question of fact to be determined by the jury. (*People v. Peterson* (1976), 41 Ill. App. 3d 1067, 355 N.E.2d 177.) A court of review will not reverse a jury's determination of guilt unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) Our review of the record convinces us that the jury had ample evidence before it to sustain the convictions.

Finally, the defendants question the severity of their sentences. These being the defendants' first convictions for armed violence, the crime is a Class 4 felony (section 33A—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 33A—3)). The trial court imposed two sentences on each defendant of one to three years to be served concurrently. The defendants argue that it is obvious the trial court sought to impose the minimum sentence. However, there is no one-third rule for Class 4 felonies. (Section 5—8—1(c) of the Unified Code of Corrections (Ill. Rev.

Stat. 1975, ch. 38, par. 1005—8—1(c)).) Therefore, in light of the defendants' background and circumstances surrounding the offense, they contend the appropriate sentences would have been one year to one year and one day in the penitentiary.

■■ Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)) grants reviewing courts the power to reduce sentences. However, in doing so, this court must adhere to the guidelines set forth by our supreme court in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882. In reversing an appellate court's reduction of a sentence, our supreme court stated as follows:

> "We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review." (68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.)

In the case at hand, the defendants offer nothing more than mere conjecture as a basis for reducing their sentence. We find this conjecture to be unpersuasive. Furthermore, we find no abuse of discretion on the trial court's part. Therefore, we decline to reduce the defendants' sentence.

For the above stated reasons, the defendants' convictions for armed violence are affirmed; their convictions for aggravated assault are reversed; and the cause is remanded to the circuit court of McHenry County with instructions to vacate the defendants' convictions for aggravated assault.

Affirmed in part; reversed in part; remanded with directions.

SEIDENFELD, P. J., and WOODWARD, J., concur.