THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LINDA E. MAKES, Defendant-Appellant.

Second District    No. 80-226

Opinion filed December 31, 1981.

Mary Robinson, of State Appellate Defender's Office, of Elgin, and Joshua Sachs, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Following a jury trial, defendant, Lynda E. Makes, was found guilty of felony theft (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)), and sentenced to two years' imprisonment. Defendant now appeals and alleges that (1) the 30-month delay between her arrest and the State's filing of an information deprived her of her constitutional right to a speedy trial; (2) the trial court erred in denying her motion to suppress her confession and failed to require production of all material witnesses thereto; and (3) the two-year prison sentence imposed was an abuse of discretion.

As this appeal involves only pretrial and sentencing issues, we summarize just those facts relevant for an understanding of the case. On February 10, 1977, defendant was confronted by Officers Velon and Kant of the Glen Ellyn police department at her place of employment, the Du Page Travel Bureau, Inc., on suspicion of theft. After she allegedly admitted her involvement in the theft of money from that travel agency, defendant was arrested, administered *Miranda* warnings, and taken to the Glen Ellyn police station. At the police station, defendant was questioned

further by Officers Kant and Velon. At trial, Officer Velon testified that when questioned, defendant admitted "issuing airline tickets and receiving money for the airline tickets that she had issued, but had not returned the money to Du Page Travel and in fact she had kept the money * * *." Later on the day of defendant's arrest, Peggy Malcolm, defendant's employer at the Du Page Travel Bureau, signed a complaint for theft against defendant. Defendant was released on bond on February 11, 1977. At a hearing on March 15, 1977, probable cause was found and bond was continued. The record also makes reference to an investigation by the Du Page County grand jury conducted in August and September of 1977, although the details of such investigation are not of record and the defendant was not indicted.

On August 14, 1979, defendant and a co-defendant, who was later severed from this case prior to trial, were charged by information with theft of approximately $15,000 from the Du Page Travel Bureau. Defendant was arraigned on September 17, 1979. Several continuances, agreed to by both parties, followed. On January 28, 1980, defendant filed a motion to dismiss the information on speedy trial grounds which was denied by the trial court after hearings consisting of arguments by counsel on January 30, and February 1, 1980. Also, although the court, without a hearing, originally denied defendant's motion to suppress her confessions filed on February 4, 1980, as it was untimely, the court later held a hearing on the "voluntariness" of the confessions on February 7, 1980, just prior to trial. The court ruled the statements admissible. Defendant was subsequently found guilty and, following a sentencing hearing, was sentenced to two years in the Department of Corrections.

At trial, the State's first witness, Peggy Malcolm, testified that she had hired the defendant in August of 1976. Malcolm had performed an audit of the travel bureau's books and discovered that defendant had issued airline tickets for which the bureau had not received payment. She reported her discovery to the Glen Ellyn police on February 10, 1977, and later that day she signed a complaint against defendant for theft. She also testified that on February 17, 1977, defendant telephoned her and offered to make restitution.

Officer Robert Velon of the Glen Ellyn police department was the only other witness called by the prosecution. Velon was contacted by Peggy Malcolm on February 10, 1977, and subsequently he and Lieutenant Kant went to the Du Page Travel Bureau in order to speak with the defendant. Defendant admitted her involvement in the theft, was placed under arrest, and was taken to the Glen Ellyn police station where Officers Kant and Velon conducted an interview. Defendant then proceeded to describe the nature of her involvement in the offense. Essential-

ly she admitted she would issue an airline ticket to an individual, receive money for it, and keep the money.

The witnesses for the defense were Harold Rubin, Leslie Lev, and the defendant in her own behalf. Rubin testified that although he did not know the defendant, he had on one occasion purchased two airline tickets from Lev at 6% less than the face value of the tickets. On direct examination of Leslie Lev, Lev invoked his privilege against self-incrimination in response to nearly every question. The trial court later granted the State's motion to strike the testimony as it was not probative.

Defendant testified that she had met Lev in a lounge in Naperville and he later contacted her and requested that she procure airline tickets for him at a discount. Defendant initially refused but later complied after numerous calls and threats of bodily harm from Lev. Defendant indicated that on several occasions Lev or a companion had struck her. She testified that Lev would pay only a portion of the face value of the ticket and occasionally would not pay anything. Her defense was that she acted under compulsion.

The State recalled Officer Velon as a rebuttal witness. Velon stated that, during his conversation with defendant at the Glen Ellyn police station, she admitted that she had been fired from the Hinsdale Travel Agency "for doing the same thing she had done at the Du Page Travel."

Defendant first contends that the 30-month delay between her arrest and the filing of the information deprived her of her constitutional right to a speedy trial. In criminal prosecutions, the accused has a constitutional right to a speedy trial. (U.S. Const., amend. VI.) This Federal constitutional right has been made applicable to the States through the due process clause of the fourteenth amendment. (*Klopfer v. North Carolina* (1967), 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988.) We must also note that we are not herein concerned with the Illinois statutory right to a speedy trial since the defendant was not in custody (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a)), nor did she demand trial (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(b)).

■■ The right to a speedy trial attaches when a criminal prosecution has begun, such as by arrest, on the charge for which the accused is subsequently prosecuted. (*Dillingham v. United States* (1975), 423 U.S. 64, 46 L. Ed. 2d 205, 96 S. Ct. 303; *United States v. Marion* (1971), 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455.) In the present case, the defendant complains of a post-arrest, pre-information delay. In *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, the Supreme Court articulated a four-point balancing test to be applied to determine if the right to a speedy trial has been violated. The court must balance the length of the delay, the reason for the delay, the defendant's assertion of

the right, and prejudice resulting to the defendant from the delay. (407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182, 2192.) The length of the delay is the triggering mechanism; until there is some delay which is presumptively prejudicial, there is no need to inquire into the other factors. (407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182, 2192.) We regard the 30-month delay in the present case sufficiently lengthy to warrant inquiry into the other factors that go into the balancing test. See *People v. Harflinger* (1977), 49 Ill. App. 3d 31, 34, 363 N.E.2d 875.

■■ The State suggests as a reason for the delay in the present case that there was a grand jury investigation to determine if others might be brought to trial for the same offense and that the State wanted to wait until such time that it felt it could prove its case beyond a reasonable doubt. Our careful examination of the record indicates that subsequent to the defendant's arrest on February 10, 1977, the grand jury did conduct hearings into this matter in August and September 1977. However, the record is simply devoid of any indication of what caused the subsequent delay to August 14, 1979, when the information was filed. Nor is it shown in the record what evidence the State was collecting during this period which necessitated the delay, as the State suggests in its brief. We therefore reject the State's contentions as having no basis in the record. The State also argues that it had been conducting ongoing plea negotiations with the defendant. While it does appear that plea negotiations were undertaken, this occurred after the 30-month delay and took place between the time of arraignment on September 17, 1979, and the time trial began. Nevertheless, we do not ascribe to the State a deliberate attempt to delay the trial in order to hamper the defense, but rather, it appears to result from the more neutral reason of negligence. Although such negligence is not to be condoned, it is weighed less heavily against the State compared to an intentional delay. (*Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182; *People v. Woods* (1979), 78 Ill. App. 3d 431, 437-38, 396 N.E.2d 1204.) While such unexplained lengthy delays are usually counterproductive to our judicial process and have been condemned by reviewing courts (see *People v. Joseph* (1975), 33 Ill. App. 3d 315, 320, 337 N.E.2d 110; *People v. Gray* (1972), 7 Ill. App. 3d 526, 532, 288 N.E.2d 26), we must consider that delay as it relates to the other two factors in the balancing test.

■■ The next factor to be given consideration is the defendant's assertion of his speedy trial right. Defendant made no mention of this right until five months after the information had been filed. The Supreme Court in *Barker* emphasized the fact that a defendant's failure to assert the right will make it difficult to prove that he was denied a speedy trial. (407 U.S. 514, 532, 33 L. Ed. 2d 101, 117-18, 92 S. Ct. 2182, 2193.) We do not view defendant's failure to demand a speedy trial as totally dispositive of the

issue here since no information had yet been filed against her, and thus, she could not have been certain that prosecution for the offense was imminent. However, defendant had been arrested and a complaint for theft had been signed by her employer, Peggy Malcolm, on February 10, 1977. On February 15, 1977, a preliminary hearing was held and probable cause was found. Defendant did not choose to demand a speedy trial at that time nor at any time thereafter until January 28, 1980. Although the information had not yet been filed, defendant could have demanded a speedy trial as soon as she was placed on bail. (*People v. Sharos* (1974), 24 Ill. App. 3d 265, 268, 320 N.E.2d 351.) Moreover, the same counsel represented the defendant during this entire period of time, and no request for a speedy trial was made. This can be indicative that the defendant did not want a speedy trial. (See *Barker v. Wingo* (1972), 407 U.S. 514, 534-36, 33 L. Ed. 2d 101, 119-20, 92 S. Ct. 2182, 2194-95.) No question is raised as to the competency of trial counsel. Under these circumstances, although we do not view her failure to demand trial as fatal to her claim, it is a factor to be weighed against her. (*People v. McCord* (1978), 63 Ill. App. 3d 542, 545-46, 379 N.E.2d 1325; *People v. Harflinger* (1977), 49 Ill. App. 3d 31, 35-36, 363 N.E.2d 875; *People v. Joseph* (1975), 33 Ill. App. 3d 315, 320, 337 N.E.2d 110.) Our conclusion that defendant acquiesced in the delay is reinforced by defendant's express disavowal of the right when later questioned by the presiding judge at her arraignment on September 17, 1979. When asked if she was invoking her speedy trial right then, counsel for defendant responded, "not at this time."

We next consider whether defendant was prejudiced by the delay. When arguing her motion to dismiss, defendant alleged prejudice in that she was unable to locate a material defense witness, Leslie Lev. This does not concern us on appeal, however, since Lev was ultimately present at defendant's trial. Defendant now alleges that she was prejudiced in that, during the delay, Lieutenant Kant of the Glen Ellyn police department, a material witness to defendant's confession, left the State. During the hearings on defendant's motion to dismiss the information, defendant never raised Kant's absence as a basis for prejudice. Assuming, *arguendo*, that this has been properly preserved, there is no showing that Kant's absence was prejudicial to the defendant. Although we will more fully discuss this later in our opinion as it relates to defendant's second assertion of error, there is no indication that Kant's testimony would be favorable to the defendant in her defense. Also, we question whether Kant's absence from the State at the time of trial is even relevant on this issue since the record indicates that Kant retired from the police force and moved to Florida as early as May of 1977, before most of the complained-of delay had transpired.

■■ The court in *Barker* stated that prejudice to the defendant should be assessed in light of the interests which the right to a speedy trial was designed to protect, namely: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. (407 U.S. 514, 532, 33 L. Ed. 2d 101, 118, 92 S. Ct. 2182, 2193.) We do not believe that any of these interests are existent under the facts in the present case. Defendant was not incarcerated during the delay; her anxiety, although a very subjective factor, should have been minimal since no information or indictment had been filed; and Lieutenant Kant's absence did not impair defendant's case. The absence of a showing of prejudice which was in any way significant in the outcome of this case is a counterbalancing factor which outweighs the deficiency of the 30-month delay. See *Barker v. Wingo*; *People v. Woods* (1979), 78 Ill. App. 3d 431, 439, 396 N.E.2d 1204; *People v. Neafus* (1976), 39 Ill. App. 3d 365, 369, 353 N.E.2d 68; *People v. Joseph* (1975), 33 Ill. App. 3d 315, 320, 337 N.E.2d 110.

The cases relied upon by defendant, *People v. Yaeger* (1980), 84 Ill. App. 3d 415, 406 N.E.2d 555, and *People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815, are inapposite. While these cases were decided in favor of the defendants on speedy trial violations, they involve a distinctly different problem than the case at bar. In those cases the issue was prejudice caused by a delay from the time of indictment to the time of arrest without notice of the charge to the defendant. Here, we are not faced with that issue as the defendant had notice of her crime on February 10, 1977.

■■ After balancing the four factors articulated in *Barker v. Wingo*, we find that defendant was not denied her constitutional right to a speedy trial since there was no showing of an intentional delay by the State, defendant made no assertion of her speedy trial right, and the delay did not result in any demonstrated prejudice to the defendant. We are not unmindful or unconcerned about the unexplained 30-month delay here, but upon balancing all the pertinent factors we are convinced that defendant's constitutional right to a speedy trial was not violated, and that our ruling is consistent with the rationale in similar decisions finding no speedy trial violation. (See *People v. Woods* (1979), 78 Ill. App. 3d 431, 396 N.E.2d 1204 (27-month delay); *People v. McCord* (1978), 63 Ill. App. 3d 542, 379 N.E.2d 1325 (30-month delay); *People v. Cannes* (1978), 61 Ill. App. 3d 865, 378 N.E.2d 552 (19-month delay); *People v. Ward* (1977), 49 Ill. App. 3d 780, 364 N.E.2d 708 (20-month delay); *People v. Harflinger* (1977), 49 Ill. App. 3d 31, 363 N.E.2d 875 (34-month delay); *People v. Neafus* (1976), 39 Ill. App. 3d 365, 353 N.E.2d 68 (26-month delay); *People v. Joseph* (1975), 33 Ill. App. 3d 315, 337 N.E.2d 110 (28-month

delay).) Thus the trial judge did not err in refusing to dismiss the information on this basis.

Defendant next contends that the trial court erred in refusing to suppress her confessions. The only persons present at the time of defendant's confessions were Officers Kant and Velon of the Glen Ellyn police department. Velon was present and testified at the hearing on the voluntariness of the confession. However, Kant was not available. Although defendant testified that Lieutenant Kant was the only one with her at one point in the travel agency when she alleges certain promises were made to her, it is clear from the record that her actual confessions as testified to by Velon were made when both officers were present.

■■ It is well established that when the voluntary nature of a confession is brought into question by a motion to suppress, it is the duty of the State to produce all material witnesses connected with the taking of the statement or explain their absence. (*People v. Harper* (1967), 36 Ill. 2d 398, 401, 223 N.E.2d 841; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 279, 393 N.E.2d 1098.) We believe that Kant's absence was adequately explained in the present case. Officer Velon testified that Kant had retired from the police force and moved to Florida in May of 1977. The absence from the State of a material witness has been held to be an adequate explanation of that witness' failure to appear and testify regarding the voluntariness of a confession and not to constitute reversible error. (*People v. Carter* (1968), 39 Ill. 2d 31, 37, 233 N.E.2d 393; see also *People v. Woods* (1979), 78 Ill. App. 3d 431, 443-44, 396 N.E.2d 1204.) Also, defendant did not file her motion to suppress until February 4, 1980. This and a prior oral motion to suppress were denied without presentation of evidence as they were considered to be untimely since brought on the eve of trial. This can hardly be considered adequate notice to the State in order to make Kant available. The trial date had been set for February 4 and actually began on February 7. The court did allow the motion to suppress to be heard after selection of the jurors and prior to the beginning of the State's case on February 7. It was at that time that defendant objected to Kant not being present to testify. Under these circumstances, and in view of the nature of the alleged promises as discussed below, we believe that the State adequately fulfilled its obligation in this regard and no reversible error occurred. See *In re Lamb* (1975), 61 Ill. 2d 383, 391-92, 336 N.E.2d 753; *People v. Woods*.

■■ Defendant further contends that the trial court erred in not suppressing her confession since testimony at the hearing established that the confession followed a promise of leniency proposed to her by Lieutenant Kant. At the hearing on February 7, 1980, defendant testified that Kant told her "that he would see to—to a fair trial for me if I—if I, you know, if

I gave certain information" and "[t]hat things may go easier if I do involve or if I do tell certain happenings and people involved." Generally, an offer of leniency is a factor to be considered in determining the voluntariness of a confession. (*People v. Bell* (1977), 50 Ill. App. 3d 82, 88, 365 N.E.2d 203.) However, we do not view these alleged statements as promises of leniency. In *People v. Hartgraves* (1964), 31 Ill. 2d 375, 202 N.E.2d 33, *cert. denied* (1965), 380 U.S. 961, 14 L. Ed. 2d 152, 85 S. Ct. 1104, our supreme court ruled that a police officer's statement to the defendant that " '[i]t would go easier for him in court if he made a statement' ", was in no way a direct promise of leniency. The court stated that a mere suggestion of the advisability of making a statement does not in itself render a confession involuntary. (31 Ill. 2d 375, 381, 202 N.E.2d 33.) Although when the involuntariness of a confession is alleged, the burden of proving the opposite is on the State (Ill. Rev. Stat. 1979, ch. 38, par. 114—11(d)), an examination of the transcript of the hearing on this issue indicates that the State carried its burden. Officer Velon testified that the defendant willingly conversed with him after she had been arrested and informed of her *Miranda* rights. Also, there is no suggestion in the testimony of defendant that the remarks of Lieutenant Kant had induced her in any way into giving her confessions. We agree with the *Hartgraves* court that a statement that "things may go easier" is not a direct promise of leniency. Also, we do not view Kant's promise of a fair trial to be coercive as to make the confession involuntary or the product of an overborne will. The trial court's determination as to the voluntariness of a confession will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Viewing the totality of the circumstances in this case, we cannot say that the trial court's decision in this regard was manifestly erroneous.

Finally, defendant contends that the trial court abused its discretion by imposing a sentence of two years in the Department of Corrections. At defendant's sentencing hearing held on March 19, 1980, she elected to be sentenced under the current sentencing statute rather than the one which was in effect at the time of the commission of the crime. Under the current law, felony theft is a Class 3 felony and one of the sentencing alternatives is imprisonment for a determinate term of not less than two years and not more than five years. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(6).

Defendant testified at the sentencing hearing that she presently resides with Gary Miller and for the last two years has taken care of Miller's seven-year-old son. She indicated that she planned to marry Miller and that she was 4½ months pregnant at the time of the hearing. Defendant has never been convicted of a criminal offense other than the

present one. Since February of 1977 she had not been arrested for any criminal offense. Defendant also indicated that she borrowed $15,400 from Gary Miller's parents in order to make restitution for her crime. At the time of the hearing, defendant had an unpaid $55,000 mortgage on her home and still owed $9,000 in auto payments.

The record in the present case indicates that defendant was involved in the commission of a similar offense at another travel agency prior to her employment at the Du Page Travel Bureau. No criminal charges were filed against defendant, and she has apparently made restitution to the victim. The trial court apparently relied to some extent on this information when it found that "defendant has a history of prior delinquency or criminal activity." In this we find no error. Our supreme court has recently stated that "a trial judge may, * * *, properly receive proof of criminal conduct for which no prosecution and conviction ensued." (*People v. La Pointe* (Docket No. 53840, filed November 13, 1981), ___ Ill. 2d ___, ___ N.E.2d ___.) Although the court noted that the trial court must exercise care to insure the accuracy of the information and to be sensitive to the possibilities of prejudice if inaccurate information is considered, we do not view this as a problem here. Officer Velon testified at trial that defendant had admitted to her involvement in the previous incident. Also, during the sentencing hearing defendant's attorney acknowledged that defendant had made restitution for "whatever" occurred at the other travel agency. Thus, we do not believe that the accuracy of the information was seriously in doubt.

■■ Defendant also argues that the trial court abused its discretion in view of the prosecutor's recommendation that work release may be appropriate. It should be noted that, during the hearing, although the prosecutor made reference to "a term of probation" or "some kind of work release," it is not clear from the record whether or not this was an affirmative recommendation for sentence. Even if we construe it as such, a prosecutor's sentencing recommendation is not binding on the trial court. *People v. Pahlman* (1977), 51 Ill. App. 3d 879, 885, 366 N.E.2d 1090.

Although this court can reduce the sentence imposed on a criminal defendant (Ill. Rev. Stat. 1979, ch. 110A, par. 615), sentencing is a matter well within the trial court's discretion, and its sentencing decision will not be altered upon review absent an abuse of discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) As the court stated in *People v. Perruquet,* "the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." 68 Ill. 2d 149, 154, 368 N.E.2d 882.

In the present case, the trial court considered the appropriate stat-

utory factors in aggravation and mitigation (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2), and, as required by statute (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1), the court found that imprisonment was necessary for the protection of the public and that probation or conditional discharge would deprecate the seriousness of the offender's conduct and be inconsistent with the ends of justice. Under these circumstances, where the trial court considers all of the relevant statutory factors, there is evidence that defendant has committed a similar offense previously, and the trial court finds she shows no remorse for her actions, we do not find an abuse of discretion when the court imposed the minimum sentence of imprisonment for the crime involved. See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 301 N.E.2d 300.

Accordingly, the judgment of the trial court is affirmed in all respects.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.