THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JESS FEATHERS, Defendant-Appellant.

Fifth District No. 5—83—0819

Opinion filed July 5, 1985.

Robert J. Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

In an indictment returned in the circuit court of St. Clair County, defendant, Jess Feathers, along with a codefendant, was charged in two counts with rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1), in two counts with deviate sexual assault (Ill. Rev. Stat. 1981, ch. 38, par. 11—3), in two counts with indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(2)), and with aggravated kidnaping (Ill. Rev. Stat. 1981, ch. 38, par. 10—2(a)(3)). His motion to sever was allowed. Following a jury trial, defendant was found guilty on both counts of rape and guilty of aggravated kidnaping. He was sentenced to three concurrent terms of six years' imprisonment.

Defendant presents eight issues on this appeal, among them that the State failed to prove his guilt beyond a reasonable doubt. Because, in our opinion, the defendant did not receive a fair and impartial trial in two very significant respects, we decline to evaluate this appeal on the basis of the substantive evidence. Rather, the procedural infirmities relating to the limitation on cross-examination of the complainant and the remarks of the trial court to the jury regarding the instructions require us to reverse the convictions and remand for a new trial.

The evidence presented against the defendant consisted primarily of the testimony of the complainant, the first witness called at trial. At the time of the incident in question, she was 14 years old. She testified that on the evening of October 15, 1982, she visited the home of her aunt, who lived about four blocks from her home in St. Louis. As she walked home at about 11:30 p.m., a beige-colored van drove toward her and stopped. The passenger got out and grabbed her, forcing her into the van. At trial the complainant identified the driver as the defendant Feathers.

According to the complainant, the van proceeded into Illinois, where the driver stopped to purchase gas. They left the gas station and drove to a secluded dirt road, where the several acts of rape and deviate sexual assault allegedly took place. After this, the defendant resumed driving and returned to Missouri, dropping off the passenger near his home somewhere along the way. The defendant drove on with the complainant still inside the van. He stopped at a White Castle restaurant about two blocks from her home, where he released her

and left.

Immediately upon her release the complainant telephoned her mother from outside the restaurant. She mentioned nothing about her ordeal but asked for permission to stay overnight with an adult friend, Sue, who was also a friend of her mother's and who lived nearby. After apparently being denied such permission, she stopped at Sue's house on her way home. She testified that she told Sue what had happened to her. Sue sent her home without doing anything further. The complainant went home and went to bed without speaking to her mother. The next morning, Sue apparently called the complainant's mother and related what had transpired at her house the night before. Complainant then described the incident to her mother and was taken to Barnes Hospital Emergency Room in St. Louis.

After direct examination regarding the complainant's version of the abduction, multiple rapes and assaults, and her release, defense counsel proceeded to extensively cross-examine her. Defense counsel was attempting to elicit specific details touching upon her ability to recall precisely what happened and touching upon her credibility as a witness, when the trial court interrupted the examination and admonished counsel that it would allow only 10 more minutes since cross-examination had already lasted "for over an hour." The questioning continued for a period of time represented by 10 pages of the transcript, when the trial court stated, "Well, defense counsel is working on short time. His ten minutes has one minute to go." Following additional questioning of the complainant and two transcript pages later, the trial court interrupted the witness as she was answering and declared:

> "Okay. That's time. Let the record show the Court has curtailed further cross-examination after keeping the witness, who is the victim, 16 years old [sic] on the witness stand for an hour and fifty minutes for cross examination."

At this point defense counsel moved for leave to further cross-examine the complainant, which motion was denied. At the close of the State's redirect, defense counsel requested permission to make an offer of proof. The trial court responded, "State anything you want in the record. Dictate to her. I don't want to listen." Defense counsel explained his position with regard to undue prejudice and denial of a fair trial. He suggested that he had further areas about which to cross-examine the complainant. The defense again moved for leave to further cross-examine and alternatively moved for a mistrial. Both requests were denied.

■ The defendant contends that the trial court effectively denied

his constitutional right to confrontation by setting an arbitrary time limit on the cross-examination of the complaining witness. (U.S. Const., amend. VI; Ill. Const. 1970, art. I, sec. 8.) While it is certain that there was not a complete denial of all right of cross-examination, the facts of record give rise to serious reservation concerning the propriety of the trial court's ruling and its subsequent refusal to entertain an offer of proof. Although the court explained later, upon denial of defendant's renewed motion *in camera,* that defense counsel "was more or less harassing the victim and not getting to pertinent points to be covered in his cross-examination," we do not find this to be entirely correct.

For example, the first interruption occurred when counsel was asking the complainant how long the defendant had his penis in her vagina. The second interruption occurred as counsel was attempting to impeach the witness with a prior inconsistent statement concerning which of the two assailants made a certain remark. The final interruption occurred as counsel was attempting to elicit the precise time of night she left her aunt's house. Additionally, from the time of the initial admonition to the time cross-examination was curtailed, defense counsel several times successfully challenged the witness' ability to recall significant particulars of the event, and he was making progressive inroads into impeaching her credibility. She admitted repeatedly that some of her reports to the police were untrue, including the area where she had been dropped off and whether the defendant was with her when she called her mother. The trial court itself, commenting on the denial of defendant's motion for a new trial on the same grounds, conceded that defense counsel was getting to "the real meat" of the matter during the latter part of the examination.

Admittedly, the cross-examination of the complainant in this case was vigorous. We are also mindful of her age and the delicate nature of the case. The accused in a criminal prosecution, however, should be permitted broad latitude in cross-examination of the State's witnesses. (*People v. Rainford* (1965), 58 Ill. App. 2d 312, 315, 208 N.E.2d 314, 316.) This is particularly true in sex cases, where the accusation is easily made and difficult to disprove. (See also *People v. Neafus* (1976), 39 Ill. App. 3d 365, 353 N.E.2d 68; *People v. Malston* (1970), 122 Ill. App. 2d 466, 258 N.E.2d 362.) This is of even greater significance where, as here, the witness in question is the complainant, whose testimony is manifestly equivocal. The trial court's comments at the sentencing hearing bear this out:

"Well, I, quite frankly, wasn't too satisfied with the testimony of the prosecuting witness. In the first place, we had a heck of

a time getting her over here in the State of Illinois to testify. I just hate to send a man to the penitentiary for a long period of time based upon her testimony. In the opinion of this Court, she is not the most believable person in the world. I'm not saying she lied as to what happened on that night, but I'm not saying that she would hesitate to lie if it was to her advantage. I'm saying that she would not hesitate to lie."

Also, we are not persuaded by the State's argument that the further areas of inquiry suggested in defendant's written motion to permit further cross-examination, filed the the last day of trial, would not have elicited additional information. The State's citations to the record concerning most of these proposed additional areas, which it says were "adequately covered," demonstrate that indeed they were covered, but only upon direct examination. The defendant was precluded from inquiry into several pertinent areas, among them the opportunity to escape, the use of force or threat of force, and the complainant's prior physical condition.

We are compelled by this record to conclude that the defendant was significantly and prejudicially denied a fair opportunity to confront his accuser. While the scope and extent of cross-examination is preeminently within the discretion of the trial judge, we believe that discretion was abused.

■■ After closing arguments the trial court addressed the jury with the following remarks:

"Now, you are going to have to bear with me in the reading of these Instructions. My voice isn't too good. I'm going to read them slowly. You can get the tenor of what they are talking about, and they are boring. *Sometimes I think if you threw out all the Instructions, you'd be as well off.*" (Emphasis added.)

The State concedes that these ill-advised remarks are indefensible, but dismisses them as "light-hearted" and indicative only of a tired and impatient judge. We decline to speculate whether these remarks caused the jury to foresake its responsibility or whether the instructions themselves were curative of the violation of judicial restraint. Such remarks, tantamount to telling the jury that it might as well disregard the law to follow, cannot be tolerated under any circumstances.

Expressions of opinion by a trial judge are liable to have great weight with the jury. (See *People v. Kelley* (1983), 113 Ill. App. 3d 761, 447 N.E.2d 973, and cases therein cited.) Moreover, "[j]urors are ever watchful of the attitude of the trial judge and his influence upon

them is necessarily and properly of great weight, thus his lightest word or intimation is received with deference and may prove controlling." (*People v. Sprinkle* (1963), 27 Ill. 2d 398, 403, 189 N.E.2d 295, 298, citing *People v. Marino* (1953), 414 Ill. 445, 450-51, 111 N.E.2d 534, 537.) The solemnity and importance of the instructions portion of this defendant's trial were undeniable compromised. We believe that the entire function of the jury was undermined, and for these reasons alone we must remand for a new trial.

■ One other issue, while not controlling on this appeal, deserves attention, as it is likely to recur upon a new trial. It concerns certain references made and evidence introduced about a subsequent offense committed by the defendant.

In responding to the defendant's contention that the trial court erred in denying a mistrial based upon admission of evidence of a subsequent offense committed by the defendant, the State contends that such evidence should have been admitted because it was relevant as tending to prove a material fact at issue. (See *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840; *People v. Dewey* (1969), 42 Ill. 2d 148, 246 N.E.2d 232.) The evidence in question related to another abduction of another young girl by a man the subsequent victim identified as the defendant, who allegedly was driving a similar colored van during the abduction which occurred two weeks after the offenses forming the basis of the instant prosecution. Relevant witnesses included the young girl and the police officer who apprehended the defendant at the very same Moto Station in Sauget during the subsequent apparent attempted rape by the defendant's companion.

We agree with the State that this evidence tends to establish a *modus operandi* and identity of the defendant. The circumstances of the defendant's arrest for that offense tend to connect him with the instant offenses alleged. Under the rationale of *People v. Stewart*, we would think at least some of the evidence outlined briefly above is relevant to establish more than mere propensity to commit crime. The court, upon retrial, should be guided by the following language in *People v. Stewart*:

> "Evidence of other crimes is admissible if it is relevant to establish any fact material to the prosecution. (2 Wigmore, *Evidence* sec. 305, at 253 n.2, sec. 306, at 255, n.1 (Chadbourn rev. ed. 1979).) When such evidence is offered, it is incumbent upon the trial judge to weigh the relevance of the evidence to establish the purpose for which it is offered against the prejudicial effect the introduction of such evidence may have upon the defendant." 105 Ill. 2d 22, 62, 473 N.E.2d 840, 860.

In light of this disposition, we need not address defendant's other alleged errors.

Reversed and remanded.

HARRISON and KASSERMAN, JJ., concur.